## WESLOSKY *et al. v.* QUARTERMAN *et al.*

1. A petition by minority stockholders of an insolvent corporation which has been placed in the hands of a receiver, brought twenty-six months after his appointment, with a view to obtaining leave to institute proceedings against the directors of the corporation, of whom he was one, for the purpose of calling them to account for alleged misconduct in conducting its business, is not premature for the reason that the affairs of the corporation have not been wound up and the extent of the liability of the directors ascertained; nor are the petitioners chargeable with laches in not sooner presenting their petition.

2. The receiver not being himself competent to bring such a proceeding against himself and his fellow-directors, it was within the discretionary power of the court to permit the complaining minority stockholders to maintain the action in behalf of themselves and others similarly situated, joining the receiver and the corporation as parties defendant.

3. The petition filed in conformity to the order of court granting leave to institute suit was good as against a general demurrer; and this being so, a motion to vacate the order was properly refused, irrespective of the question whether the plaintiffs' pleadings were or were not open to objections which could and ought to have been raised by special demurrer.

Argued May 22, — Decided June 15, 1905.

Motion to vacate order.    Before Judge Spence.    Dougherty superior court.    October 7, 1905.

On January 17, 1902, the directors of the Commercial Bank of Albany filed a petition in the superior court of Dougherty county, alleging that the institution was financially embarrassed and unable to meet its obligations, and praying for a receiver to

take charge of its assets and wind up its affairs. The court appointed one of the directors, Morris Weslosky, receiver, and he entered upon the discharge of his duty as such and took possession of the assets of the bank. Some twenty-six months thereafter, on March 15, 1904, pending the receivership, S. J. Quarterman and other stockholders of the bank presented to the court a petition in which they set up the following facts: Some time prior to the suspension of the bank its directors, in violation of the provisions of the Civil Code, § 1914, made large loans to the officers of the bank, without good security. Among the loans made was one to Carter & Woolfolk, a partnership composed of the president of the bank, who was also one of the members of its finance committee and a director of the bank, amounting to the sum of $19,503.77; another loan of $2,318.21 to this director individually, and one of $5,851.89 to his wife; a loan of $5,250 to the wife of the bank's president; a loan of $1,579.04 to its cashier, who was a director and a member of the finance committee, and another of $4,279.07 to an insolvent corporation the stock of which was mostly owned by him and another director; still another loan to Morris Weslosky, the vice-president, a director and a member of the finance committee, of $1,000, and one of $3,500 to him in the name of the Albany Grocery Company, under which name he conducted business; and yet another of $3,500 to a partnership composed of his father and another of the bank's directors, as well as a loan of $1,000 to a firm of which still another of the directors was a member. These loans amounted in the aggregate to more than 25 per cent. of the capital stock of the bank, and one of them to more than ten per cent. thereof, as did also another loan mentioned. Other loans were made to certain relatives of the officers and directors of the bank in violation of law, and also to numerous persons on scarcely any security, and sometimes without any security at all. Large overdrafts were also permitted, the greater part of which still remain uncollected. The affairs of the bank, as now ascertained, are such that it is probable the depositors and general creditors will be paid in full, but the stockholders will receive nothing, but will lose the entire value of their holdings. Gross misconduct and neglect in the management of the affairs of the bank was charged against its officers and directors, amounting

not only to a breach of the duty they owed to its stockholders, but to a violation of the penal laws of this State. It was alleged, that, as a result of such malfeasance and misfeasance, the directors were liable to account for the monies lost and diverted by their misconduct; that the court's receiver, Morris Weslosky, who had been vice-president of the bank, one of its directors and a member of its finance committee, was himself liable with his codirectors for the wrongs committed by them, and was not in a position either to sue himself or to prosecute with vigor against his fellow wrong-doers an action in behalf of the corporation; and that it was accordingly the right of the petitioners, in behalf of themselves and other stockholders at interest, to proceed against the directors and enforce against them the personal liability they had incurred to the corporation. Petitioners prayed that they be allowed to so proceed, any fund realized as a result of the action to be subject to the further order of the court.

The court granted an ex parte order permitting petitioners to institute an equitable proceeding against the directors of the bank, including its receiver, Weslosky, as prayed, and to join as a party thereto the corporation, either as a plaintiff or as a defendant, in order that it might become bound by the final decree. After the filing of the suit so authorized, Morris Weslosky and John Mock, who were duly made defendants, appeared before the court and presented a written motion to vacate the ex parte order above referred to, on the ground that it had been improvidently granted, in that petitioners were without right to legally or equitably maintain such an action. This motion was overruled, and movants excepted.

*John D. Pope* and *Little & Battle*, for plaintiffs in error.

*Hall & Wimberly, Crosland & Jones*, and *I. J. Hofmayer*, contra.

FISH, P. J. (After stating facts.) 1. Among the reasons assigned why the refusal of the court to sustain the motion was erroneous are: (1) that the suit authorized to be instituted is premature, as the affairs of the corporation are still being liquidated; there is no certainty that the shares of its capital stock will be depreciated, or, if so, that they will become depreciated in any particular amount; and (2) because the petitioning stockholders

have been guilty of laches in failing to institute their suit within a reasonable time. It would seem that the action, if prosecuted at all, should be commenced before the affairs of the bank are finally wound up. Petitioners distinctly allege that while depositors and general creditors will probably be paid in full, the available assets of the corporation will be insufficient to meet the claims of its stockholders, and they will practically lose the entire value of their holdings. If they be unduly apprehensive, and the assets prove sufficient to meet their claims, in whole or in part, the defendants will profit by their good fortune; and in no event will the defendants, if subjected to liability, be called upon to pay more than is sufficient to discharge the just demands of the petitioners. The court may be relied on to so frame its de-- cree. As to the inconsistent charge of laches, we are of the opinion that the petitioners have moved in ample time to protect their rights. They are not chargeable with fault because they did not find out the alleged misconduct of the bank's governing officials before it was claimed to have been wrecked and placed by the directors in the hands of a receiver; and even though they might then have ascertained the true condition of affairs, it was not unreasonable to wait twenty-six months, at which time it became apparent that the assets of the bank would be insufficient to meet the demands of its stockholders. The status was in no way changed by the delay, and the defendants are not in a position to complain thereof.

2. Unfaithful officials of a corporation are primarily liable to it for their misconduct. But where they are in control and minority stockholders are unable to secure relief within the corporation, such stockholders may usually maintain an equitable proceeding and thus call the managing officials to account for fraud or acts which are ultra vires. 3 Cook, Corp. (5th ed.) § 735. To such a proceeding, the corporation is a necessary party defendant, in order that the result may bind it and bar any future action which it might bring for the same cause. *Bethune* v. *Wells*, 94 *Ga.* 486. Had not the bank been placed in the hands of a receiver, the right of petitioners to bring the present proceeding would not be open to question. It is insisted, however, that after a receiver for the corporation has been appointed, all actions must proceed in his name, as he represents not only the corpora-

tion, but all persons concerned in the due winding up of its affairs. Ordinarily it is undoubtedly true that the receiver is the proper party to bring suit against offending officials.    But when, as in the present case, the receiver is himself charged with having been one of the officials guilty of the wrong-doing, an equitable proceeding may be maintained by the stockholders, the receiver and the corporation both being made parties to the action.    2 Morse, Banks & Banking (4th ed.), § 718, p. 1151; Brinkenhoff *v.* Bostwick, 88 N. Y. 52.    And it is unnecessary to allege any demand made upon the receiver to sue, since he could not be permitted to sue himself nor would he be a proper person to prosecute a suit against his fellow wrong-doers. 3 Cook, Corp. (5th ed.) § 741, and note on page 1911, citing Flynn *v.* Third Nat. Bank, 122 Mich. 642.    The receiver must, however, be made a party defendant, that he may be given an opportunity to defend the action.    3 Cook, Corp. § 738, pp. 1898–9.    To allow such a proceeding does not bring about a multiplicity of suits, as contended; for some one .must prosecute a suit against the corporation's unfaithful officials, in order to establish their liability and call upon them to account.    Nor is there anything in the suggestion that the remedy of the complainants was to apply to the court to have another receiver appointed to take the place of Weslosky. To remove him from office on the ex parte application of the complainants would be manifestly unjust; whereas to inquire into the truth of the charges of misconduct brought against him, on which they base their right to sue, would involve a trial of the case made in their petition, as a preliminary step towards granting their prayer to be allowed to maintain an action against him and his fellow-directors.    One trial of the controlling issue should suffice to settle it once and for all.    Certainly it was within the discretion of the court to allow petitioners to maintain the action, notwithstanding the corporation had been placed in the hands of a receiver. *Stephens* v. *Augusta Telephone Co.,* 120 *Ga.* 1082, and cit.    It does not appear that the court abused its discretion.

3. Another assignment of error upon the refusal of the court to vacate its order allowing suit to be instituted is, "Because the petition on which the order was issued does not allege fraud or the commission of any ultra vires acts on the part of the directors."    In this connection the Civil Code, § 1860, is cited,

and plaintiffs in error insist that no ultra vires acts were shown, since the provisions of law the directors were charged with having violated did not apply to the Commercial Bank of Albany, but only to State banks which issue circulating notes, and that there is no charge against the directors of actual fraud.　Of course, if the complaint of the stockholders were idle and obviously without merit, this would have afforded ground for refusing to grant them permission to bring their suit.　But is it so? It is somewhat amplified in the petition they were allowed to file against the defendants below who sought to have the action stayed.　In that petition the charge is made, that, a few weeks before the suspension of the bank, the directors declared a semiannual dividend of three per cent. on the capital stock of the bank, which dividend was not taken from the net profits arising from the business, and which crippled the bank by withdrawing cash assets, and led petitioners and others to believe that the bank was in a sound and solvent condition.　There are other allegations indicating that the conduct of the directors in making loans to themselves and relatives and endeavoring to conceal the true state of the bank's affairs was fraudulent. Clearly the petition was such as to withstand a general demurrer. The motion to vacate the order granting permission to sue can not be said to supply the place of a special demurrer to the petition filed.　That motion in the most general terms alleges that "as matter of law, under the allegations of the petition [for leave to institute suit], no legal right existed in the plaintiffs to exhibit said petition against any of the defendants named therein, nor to institute any action, nor to recover any judgment or decree against the corporation nor any of its officers or directors; nor is it competent in law or equity to wind up the affairs of the bank nor to fix the rights of stockholders in the proceeding which the plaintiffs have instituted."　The most the court below was called on to determine, in passing upon this motion, was: (1) Were the complainants proper parties to institute such a proceeding? (2) Did they set forth a cause of action? (3) Was it expedient to allow them to maintain the suit in behalf of themselves and other stockholders similarly situated?　Accordingly, we can not undertake at this time to deal with the question whether or not the acts of the directors

complained of amounted to a violation of the banking laws of the State, nor to pass upon any other question which can and should be raised by special demurrer to the petition.  Suffice it to say, the court below rightly held it was incumbent on the defendants to defend the proceeding in the usual and regular way, by demurrer or answer, or both.

*Judgment affirmed.  All the Justices concur, except Simmons, C. J., absent.*