### LAMAR, executor, *et al. v.* TAYLOR *et al.,* receivers.

1. Upon an application by receivers of a bank, the court directed them to bring suit against the stockholders for a certain part of the statutory liability imposed upon them by the charter.   Upon another petition of the receivers, they were authorized to compromise with such of the stockholders as would pay a certain amount.   Certain stockholders (including the executors of a deceased person who was both a stockholder and a depositor) presented to the court a petition asserting, that, under the charter, there was no right of action in the receivers against stockholders; that if an act of the legislature undertook to give to the receivers such a right of action, it was unconstitutional; that the suit by the receivers against stockholders was prematurely directed and brought; that the amount claimed was excessive and the order to sue was based upon the inclusion of items not recoverable; and that the proposed compromise was arbitrary and improper.   They prayed that the orders should be revoked and that the suit brought by the receivers against the stockholders should be dismissed.   This petition was denied.   *Held,* that a direct bill of exceptions to this court will lie from such ruling.

2. Where certain stockholders filed objections to an order granted by a court authorizing receivers to settle with such of the stockholders as would pay a specified amount on account of their statutory liability (such liability under the charter being proportionate and ratable, and not by one stockholder for another), an order overruling such objections and allowing the original order authorizing compromises to stand was not such a final judgment in the case as could be brought to this court by a direct bill of exceptions; nor if the objections to the order allowing compromises to be made had been sustained, would this have terminated the case against the stockholders.

(*a*) Objections to the order allowing compromises did not furnish a proper mode of attacking the order allowing suit to be brought.

3. The act of December 18, 1894 (Acts 1894, p. 76, Civil Code (1910), § 2249), which dealt with the statutory liability of stockholders in banks and other corporations, and declared that such individual liability should be enforced by the assignee, receiver, or other officer having the legal right to collect, marshal, and distribute the assets of an insolvent bank or other corporation, was applicable to the statutory liability of the stockholders of the Exchange Bank of Macon for the payment of the depositors, under the ninth section of the amendment to its charter, enacted in 1890, the bank having failed and its assets having been placed in the hands of receivers in 1907.

(*a*) This proceeding was commenced prior to the act of August 22, 1907 (Civil Code (1910), § 2356), and was not of the character dealt with in that act.

4. Under the decision in *Moore* v. *Ripley*, 106 *Ga.* 556 (32 S. E. 647), the act of 1894 (Civil Code (1910), § 2249) is not unconstitutional as being retroactive or impairing the obligation of contracts.

(*a*) Under our statute, that decision could not be reviewed or reversed except by the entire bench. The present case is decided by less than the entire bench. The former decision could not be reviewed and reversed, for this reason, if for no other. But it is not intimated that it would be reversed or modified by the entire bench, especially as no complaint is made by any creditor whose claim arose by contract before the passage of the act of 1894, but only by stockholders (one of whom, now deceased, was also a depositor) appearing to be such in 1907.

5. The order authorizing a suit to be brought by the receivers of the bank against the stockholders to enforce to a certain extent their individual liability under the charter for the payment of depositors, and the suit thereunder, were not premature.

6. Holders of certificates of deposit are depositors within the meaning of the provision of the charter of a bank, imposing on stockholders a statutory liability, in addition to the full payment of the amount of their subscriptions, for the payment of depositors.

7. Upon the insolvency of a bank and the appointment of a receiver for its assets, as between depositors having deposits subject to check and the corporation, interest begins to run on such deposits. And where there is a statutory liability on stockholders for the payment of depositors, interest is to be added to the principal of the deposit, not exceeding the statutory limit, in a suit to enforce such liability.

(a) The question of whether interest can be allowed to one creditor of an insolvent corporation at the expense of another by taking it out of the common fund, which is insufficient to pay all, while the law, acting for all, is administering the assets, is distinct from the question of whether as between a creditor and the corporation, or its stockholders made liable by statute, interest shall be calculated.

8. The fixing of certain fees in favor of attorneys bringing suits against the stockholders, reserving the question as to whom they shall be taxed against, is not sufficient to require the revocation of the order directing the suit to be brought.

(a) While there are some allegations in regard to previous payments of large fees to attorneys in the case, it is not made to appear that the order attacked should be revoked.

9. Under the facts contained in the record, it was not made to appear that the court acted arbitrarily or abused his discretion in authorizing the receivers to settle with stockholders who were willing to pay without litigation, on account of their statutory liability, at a certain amount estimated as being proper under the circumstances, so as to require a revocation of such order.

JANUARY 14, 1914. REHEARING DENIED FEBRUARY 25, 1914.

Motion to set aside judgment, etc. Before Judge Bell. Bibb superior court. October 8, 1912.

On July 6, 1907, at a meeting of the board of directors of the Exchange Bank of Macon a resolution was adopted in which it was recited, that there had been a run on the bank, exhausting its available cash; that it was impossible to raise cash to meet a further run, without sacrificing the assets; that it was impossible to continue the bank as a going concern, and for the board to adequately protect the assets and property in their hands for the payment of debts; and that there was manifest danger of loss and material injury to those interested. It was resolved that, in order to protect the interests of depositors, general creditors, and stockholders, counsel for the bank were authorized to institute proper legal proceedings. An equitable petition was accordingly filed, under which receivers were appointed. On June 29, 1912, the receivers presented to the judge a petition setting out: that dividends amounting to 85 per cent. of the unsecured indebtedness had been paid; that there remained on hand of the assets of the bank about $16,565.58, and that $5,000 more would probably be collected; that, under the charter, the stockholders were individually liable equally and ratably, and not one for another as sureties, to depositors for all money deposited, in an amount equal to the face value of their respective shares of stock; that the capital stock was

$500,000, but a portion thereof stood in the name of the corporation itself, and some of the stockholders were wholly insolvent; that holders of stock to the amount of about 60 per cent. thereof were solvent; that the total liability to be enforced against the stockholders on account of deposits subject to check and certificates of deposit, including principal and interest, was estimated at $120,000, sixty per cent. of which would be $72,000.00. They prayed for authority to bring suit against the stockholders, and to employ counsel for that purpose. An order was passed ex parte, authorizing the bringing of the suit and the employment of counsel upon certain specified fees; but the question of whether the fees should be taxed against depositors or stockholders, or against one class of stockholders, was reserved for future determination.

On August 26, 1912, the receivers presented their petition, in which they alleged: that it appeared that the assessment which would have to be made upon each share of the capital stock of the bank, in order to pay in full the principal and interest due to depositors, was $29.36 per share; that certain creditors of the bank had not presented their claims for payment, and might not do so, in which event the amount set aside from the assets in hand to pay them might be used to pay other creditors; that the assets of the bank might be increased beyond the amount estimated, by reason of certain pending litigation; and that they were informed that a number of the stockholders desired to make settlement of their charter liability without further litigation, and to pay a reasonable amount in discharge of such liability. The receivers stated that, in their opinion, a fair settlement with such stockholders would be at a rate of $20 per share. They therefore recommended that they be authorized to make such settlement, to hold the amount so paid in as a separate fund for distribution to the depositors; and, in the event enough should be recovered from other sources to pay all of the creditors in full, including interest on their claims, that the residue, if any, should be applied first to reimbursing the stockholders who may have paid money into court either by way of settlement or at the end of a litigation, before any pro rata distribution of the surplus should be made to all the stockholders of the bank. The judge ordered certain notice to be given, allowed objections to be filed within thirty days, and directed that, if no objection should be filed, settlements could be made as

recommended; and the receivers were directed to hold all amounts received from such settlements as a separate fund, and to distribute the same, after paying counsel their commissions fixed by the former order, to the depositors who might have presented their claims for payment. Provision was made for the distribution of any surplus which might arise, as recommended by the receivers. The time for making settlements was limited to October 10, 1912.

Certain stockholders filed objections, in which they sought to attack both the order of compromise and the order authorizing the receivers to bring suit. They also filed a petition praying for the revocation both of the order authorizing the receivers to sue, and of the order authorizing settlements. They further prayed that the general suit against stockholders, which had been filed by the receivers under the first order, be dismissed without the expense of serving it upon all the stockholders. Certain of the petitioners alleged that they were executors of a deceased stockholder, who was also a depositor. The presiding judge overruled the motion to revoke the former orders and to dismiss the suit, and also overruled the objections which had been filed to the order in regard to settlements, and allowed ten days additional time for the making of settlements. The objectors and movants tendered two bills of exceptions, the one assigning error on the overruling of the motion to revoke the former orders and dismiss the suit of the receivers, and the other on the overruling of the objections to the order authorizing compromises.

*Guerry & Son, Hall & Roberts,* and *Nottingham & Nottingham,* for plaintiffs in error.

*Miller & Jones* and *Hardeman, Jones, Park & Johnston,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. These cases were argued together. When they were called, a motion was made to dismiss the writ of error in each of them, on the ground that it was prematurely brought.

Mere interlocutory orders do not furnish ground for direct exception; but where receivers are appointed for a bank or other similar institution, the general litigation sometimes comprehends various branches, which are in substance separate cases, and in which separate judgments are rendered final with respect to the branch under consideration. In the instant case an order was granted ex parte, directing the receivers to bring suit against the stockholders

on account of their statutory liability under the charter. It also provided for paying the attorneys who should bring the suit not exceeding $5,000 upon its commencement, allowed to them certain percentages on amounts which might be collected by them, and reserved for future determination the question of whether such fees should be taxed against depositors or stockholders, and against which class of stockholders. Various stockholders presented a petition praying that this order and a subsequent order in reference to compromising the claims against stockholders who were willing so to do should be revoked; and that the general equitable petition, which had been brought against stockholders under the order authorizing the suit, should be dismissed. This was overruled, and one of the bills of exceptions assigned error on that ruling. Under the Civil Code (1910), § 6138, the rule is (omitting cases which can be brought up by fast writ of error) that no case shall be brought to the Supreme Court so long as it shall be pending in the court below, unless the decision or judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a final disposition of the case, or final as to some material party thereto. If the order prayed for in this case by the plaintiffs in error had been granted, it would have terminated the suit against stockholders. While connected with the general litigation, and for the purpose of bringing in funds for distribution, it was in effect a separate case, a species of ancillary proceeding. If it were finally terminated and the stockholders held not to be liable, why should that judgment be required to lie dormant until the final decree in the main case? Or, under the statute, when the court refused to revoke the order authorizing the proceeding against them and to dismiss it accordingly, why should not that separate judgment be tested now by direct bill of exceptions? To hold that it could only furnish ground for filing a bill of exceptions pendente lite, and that, after the entire case in which the receivers were appointed had been terminated by final decree as to other matters, one party or the other must then except to the general decree in order to reach the separate determination of the question of liability or non-liability of the stockholders in the subsidiary proceeding against them, would not be in accord with the spirit or intent of the statute. It was urged that the various grounds on which it was sought to have the former orders set aside could have been set up

in defense of the suit. But if the order to sue was granted unlawfully or improvidently, and the suit was accordingly commenced, there is no reason why the stockholders should not ask its revocation and have the suit terminated at once, instead of going through an expensive litigation in order to demonstrate that the court had no lawful authority to direct suit to be brought. Moreover, it may be doubted whether the order granting authority to the receivers to bring a suit could be collaterally attacked in defense of such a suit when brought, unless it were a mere nullity. We do not mean to be understood as holding that wherever a court orders its receiver to bring suits on claims, the defendants can try the merits of the cases summarily on a motion to revoke. But, under the facts of this case, involving the legal right to have the receiver bring suits at all against stockholders and the constitutionality of the law authorizing it to be done, a writ of error will lie. While no motion to dismiss the writ of error was made in *Weslosky* v. *Quarterman*, 123 *Ga.* 312 (51 S. E. 426), the case came to this court upon the overruling of a similar motion, and was here determined. See also *Brown & Co.* v. *Massman Bros. & Co.*, 71 *Ga.* 859; *Graham* v. *Smith*, 80 *Ga.* 676 (7 S. E. 131); *Booth* v. *State*, 131 *Ga.* 750 (63 S. E. 502); *Capital City Tobacco Co.* v. *Anderson*, 138 *Ga.* 667 (75 S. E. 1040); Williams *v.* Morgan, 111 U. S. 684 (4 Sup. Ct. 638, 28 L. ed. 559).

2. The motion to revoke the two orders which had been granted substantially covers the questions raised by the objections to the second order. The latter order does not finally dispose of the suit against the stockholders; nor, if the objections of the plaintiffs in error to the authority to compromise had been sustained, would it have terminated the case as to them, in so far as it set up their statutory liabilities. Under the charter of the bank, they were not liable as sureties one for the other, but separately and ratably. Settlement with one stockholder would not increase the liability of another. In *McGregor* v. *Third National Bank*, 124 *Ga.* 557 (53 S. E. 93), on application of a creditor, and over objections raised by the receiver, the latter was ordered to settle with the creditor on certain terms. The receiver excepted, as representing the creditors and stockholders of the insolvent bank. No question was raised in this court as to whether the judgment to which exception was taken was final. A motion was made to dismiss the

bill of exceptions, because the receiver was an officer of court and had no right to except to an order directing him to effect a compromise. It was also contended in that case that there was no brief of evidence properly brought to this court, and that there was no sufficient assignment of error. We do not think that decision controls the present case. In this case the receivers have not excepted. The order did not undertake to terminate by adjudication or by settlement any particular claim, but held out to stockholders who might so desire an inducement to settle. It does not appear that any one has settled or will certainly settle the suit against him. The order is not such a one as can be brought up by direct bill of exceptions by these plaintiffs in error. The writ of error is therefore dismissed.

3. It was contended that under the charter of the Exchange Bank of Macon, if there was any right of action against the stockholders, such right was in the depositors and not in the receivers. The Exchange Bank of Macon was incorporated by a special act of the legislature, approved December 12, 1871 (Acts 1871-2, p. 149). Its charter was amended in 1877, 1887, and in 1890. In the last of these amendments occurs the following section: "Be it further enacted by the authority aforesaid, that said corporation shall be responsible to its creditors to the extent of its capital and its assets, and each stockholder shall be individually liable for all the debts of said corporation to the extent of his or her unpaid shares of stock, and said stockholder shall be further and additionally individually liable, equally and ratably, and not one for another, as sureties, to depositors of said corporation for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock; it being the true intent and purpose of this section of this act, that, as to depositors, for all moneys deposited with said corporation, there shall be an individual liability upon such stockholder in such corporation over and beyond the par value of his or her original shares of stock, equal in amount to the face value of said shares of stock; provided, that said liability of the stockholders shall not prevent depositors from having equal rank with all other creditors upon the capital property and assets of said bank." (Acts 1890-91, vol. 2, pp. 129, 130.) By the act of December 18, 1894 (Acts 1894, p. 76, Civil Code (1910), § 2249), referring to the statutory liability of stockholders, it is

declared that "such individual liability shall be an asset of such bank or other incorporation, to be enforced by the assignee, receiver, or other officer having the legal right to collect, marshal, and distribute the assets of such failed bank or other corporation." We think there can be no doubt that, under the terms of this act, the right to bring suit on such liability was conferred on a receiver, where one was appointed. It did not change the fact that the recovery was for the benefit of depositors, or alter the extent of the liability; but, instead of having numerous suits to enforce the statutory liability which might exist on the part of stockholders, it provided for collecting and disbursing the recovery through one agency of the law.

It was contended that the act of 1894 was changed by the act of August 22, 1907 (Acts 1907, pp. 85-89, Civil Code (1910), § 2356), which provides for the bringing of suit by the receiver therein mentioned against stockholders, in case of an insufficiency of assets to pay liabilities. The act of 1907 created a State bank bureau, and provided for the examination of banks and for the institution of proceedings against insolvent banks or those which may become liable to have their charters forfeited. The receiver mentioned in the code section last cited is one appointed under such proceedings commenced by the attorney-general and under order of the Governor. In such a proceeding the provision as to suit by the receivers would control, if there be any conflict between it and the older act, though both are embodied in the Code of 1910, which was adopted as a whole. *Staten* v. *State*, 141 *Ga.* 82 (80 S. E. 850). But the case under which these receivers were appointed did not arise under the act of 1907, but was commenced before the passage of that act by an equitable petition filed under authority of the directors of the bank.

4. It was next contended that, if the act of 1894 applied to the statutory liability of the stockholders in this bank, it was unconstitutional as being retroactive and impairing the obligation of contracts. In *Moore* v. *Ripley,* 106 *Ga.* 556 (32 S. E. 647), the decision substantially disposes of this contention, holding that the provision of the act of 1894 for the enforcement of the liability by the receiver was remedial in its character, and not unconstitutional as being retroactive. As already mentioned, the extent of the liability of the stockholders was in no way changed by that act, but

only the method of collecting and distributing to the proper parties the amount for which the stockholders are liable, in accordance with equitable methods. It is a mistake to argue that the receiver represents only the interest of the bank. His appointment affected its stockholders, and he acts also for the benefit of creditors. In the brief of counsel for the plaintiffs in error was embodied a request that, if the case above cited was held to be controlling, the decision therein should be reviewed. When the case was argued, it was announced that one member of the bench was disqualified, and, under our statute (Civil Code (1910), § 6207), there could be in the present case no review or reversal of the decision mentioned. This alone would answer the request. But we do not wish to be understood as intimating that the decision in *Moore* v. *Ripley*, supra, would be changed, if the entire bench took part in the consideration of the instant case. See also *Wheatley* v. *Glover*, 125 *Ga.* 710 (13, 14), 726 (54 S. E. 626). If such a statute would be unconstitutional as to a creditor by contract made before its passage, no such creditor is excepting, if any exists; and it does not even appear that the stockholders before us were such when the act was passed (if that would make any difference), or that any contractual right on their part is impaired. See also, on this subject, Henley v. Myers, 76 Kans. 723 (93 Pac. 168, 173, 17 L. R. A. (N. S.) 779); Story v. Furman, 25 N. Y. 214, 224.

5. It was further urged that if the suit could be brought by the receivers against the stockholders to enforce their individual liability under the charter, it was prematurely ordered to be brought. It was urged that the liability of the stockholders was not primary, but secondary and in the nature of a guaranty. Prior to the act of 1893, providing for the incorporation of banks (Civil Code (1910), §§ 2262, 2270), the legislature had not declared any settled policy as to the liability of stockholders, but each charter granted by that body fixed the liability in the particular instance. *Reid* v. *DeJarnette*, 123 *Ga.* 787, 793 (51 S. E. 770, 3 Ann. Cas. 1117). This charter was granted prior to that act, and not under it. In *Lane* v. *Morris*, 8 *Ga.* 468, the provision was that the property of stockholders should be pledged and held bound in proportion to the amount of shares, and the value thereof, that each individual or company might hold in the bank, "for the ultimate redemption of the bills or notes issued by said bank, in the

same manner as in other actions of debt, and no stockholder shall be relieved from such liability by sale of his stock until he shall have caused to have been given sixty days notice in some public gazette of this State" (p. 469). It was held that all stockholders who had transferred their stock and given notice in terms of the act were exempt, unless the failure occurred within six months thereafter; but that all other stockholders were liable for the redemption of the bills, whether they had transferred their stock or not. In one of the headnotes it was said that this liability was "not primary nor total, but secondary and proportionable." The action was brought by the holder of certain bills of the bank against a stockholder, to recover of the latter his pro rata liability for the payment of such bills. It was alleged that a judgment had been obtained against the assignee of the bank, and a return of nulla bona had been made. What was said in the opinion must be taken in connection with the questions raised. The act of 1894, in regard to the collection by a receiver, had not then been passed, and certain expressions in the opinion relied on in the argument here were not used in relation to the power to pass such an act, but in reference to the contention that, upon the dissolution of the corporation, debts due to and from it were extinguished, and that under the law as it then stood, after the appointment of a receiver by the legislature, the billholder could not maintain his action.

Whether the statutory liability of stockholders is held to be primary or secondary depends much upon the language of the particular statute under consideration. Where it is deemed secondary, it is not that of mere guarantors by contract. 3 Clark & Mar. Priv. Corp. 2523, § 810, and citations. Under the peculiar language of the charter before us, there is no little force in the argument that the liability of the stockholders as to depositors is primary. But conceding, for the present purpose, that the liability is secondary, it is not necessary to first absolutely exhaust the assets of the corporation, legal and equitable, before suing stockholders on such liability, where the necessity for resorting to the liability of stockholders is made to appear. If suits based on this character of liability could be brought by depositors after insolvency and the appointment of receivers, no suit to judgment against the bank and return of nulla bona would be necessary. 3 Clark & Mar. Priv. Corp. § 814, p. 2535. Under our statute the in-

dividual liability of the stockholder may be enforced by the receiver in connection with administering the estate. At most it is only necessary that the assets of the bank are insufficient to pay all of its liabilities. This does not mean that the estate must be fully wound up before stockholders are sued; nor will a suit against the directors for breach of duty, brought at the instance of stockholders, delay the proceeding to enforce the liability of the stockholders for the benefit of depositors. The presiding judge was satisfied that there were not enough assets to pay all creditors, and granted an order that the stockholders should be sued. If stockholders claimed that such order was improvidently granted, and should be revoked, the burden was on them to show that fact. They have not done so.

Even in a case of ultimate liability of a stockholder of a bank to a billholder it was held that the latter did not have to wait until all of the equitable assets of the bank, including unpaid capital stock, had been called in and exhausted; but that a judgment and entry of nulla bona on the execution was sufficient. *Thornton* v. *Lane,* 11 *Ga.* 459, 510. On page 519 the following was quoted approvingly: "Better that the corporators should become the victims of their own disasters, in preference to their being fatal to their unfortunate creditors."

6. It was further contended that, in arriving at the amount for which suit was directed to be brought against each stockholder, in proportion to the number of shares of his stock, the presiding judge included the claims of holders of certificates of deposit, as well as those of ordinary depositors subject to check. The argument was that certificates of deposit were in the nature of promissory notes, and that holders of them were really creditors of the bank, rather than depositors within the meaning of the charter. The language of the charter refers in general terms to depositors. It does not confine the liability of stockholders to the payment of depositors whose claims might be evidenced by entries in pass-books, or exclude those whose claims might be evidenced by certificates. Certificates of deposit are not always uniform in their provisions, and the special terms contained in them may to some extent vary their effect. The contention with which we are dealing does not depend on the terms of any particular form of certificate, but on the theory that certificate-holders generally are not depositors within the

meaning of the charter. It is true that holders of certificates of deposit are creditors of a bank, and that certificates of a certain form have been declared to be in effect promissory notes. *Lynch* v. *Goldsmith,* 64 *Ga.* 42. But a general deposit also creates the relation of debtor and creditor between the bank and the depositor. It is not contemplated that the actual money deposited will be held by the bank, but that it will be used, and other money will be paid when called for by the check of the depositor. *Ricks* v. *Broyles,* 78 *Ga.* 610 (4), 614 (3 S. E. 772, 6 Am. St. R. 280). Thus, whether a general deposit be evidenced by an entry in a pass-book, or by a deposit-slip, or by a certificate, the legal relation between the parties is that of debtor and creditor. The expression "certificate of deposit" in itself imports that it is based upon a deposit, and the issuance of such a certificate does not exclude the holder from falling within the general descriptive word "depositors" for whose benefit the additional liability was created by the charter. In Tiffany on Banks and Banking, 75, it is said: "Ordinarily a depositor receives from the bank no evidence of his deposit, except the entry of the amount in his pass-book. In such case the bank undertakes to honor his checks or other orders to the extent of the deposit. Sometimes, however, when a checking account as to a deposit is not contemplated, the bank issues a certificate of deposit. A deposit so made has the character of a general deposit, in so far as it creates simply the relation of debtor and creditor between the bank and the depositor." See also page 80; 1 Morse on Banks (4th ed.), §§ 297, 301. The presiding judge did not err in treating the holders of certificates of deposit as depositors within the meaning of the charter.

7. It was still further urged, that, in estimating the amount for which suit should be brought against the stockholders, the court took into consideration interest on the claims of "depositors proper," and that "no interest is chargeable on the claims of depositors (proper) because the assets have been in the custody of the law, and the said claims are unliquidated demands." The question of interest in cases of insolvency of a corporation has given rise to many and sometimes conflicting decisions. Most of them may be classified under a few general heads as to the points involved: (1) The right of creditors to recover interest against the corporation. (2) Where there is a forfeiture of the charter, or

the entire assets are seized by the court and held by its receiver for payment of debts, and they are insufficient to pay all creditors, shall interest be allowed out of the fund? (3) The right to recover interest as against stockholders on their statutory liability for the debts of the corporation. (4) Whether interest on the amount for which the stockholder is liable can be recovered, even though it may increase the recovery beyond the amount specified in the statute. (5) The rate of interest, if interest is allowable. (6) Exceptional cases arising from special provisions of the charter or law declaring the liability, or from the nature of the debts of the corporation for which the stockholder is liable. A careful consideration of the exact point and the parties involved will tend to prevent confusion. It is not necessary for the purposes of the present case to enter into a discussion of all these questions or of the many cases dealing with them. It may be said that if a debtor corporation is insolvent, this alone furnishes no reason why, as between the corporation and its creditor, the claim of the latter should be diminished; if the claim of the creditor is one which bears interest, the failure of the debtor to pay the debt does not lessen its obligation or free it from liability for interest. When the corporation has failed and its assets have been taken by a court, through its receiver, for the payment of debts, and there is not enough to pay all creditors, it has been held in a number of cases that interest will not be computed on claims so as to work inequality or injustice in the distribution of the funds among creditors, for the common benefit of all of whom the assets or funds are being administered. In People v. American Loan and Trust Co., 172 N. Y. 371 (65 N. E. 200), Vann, J., said: "Interest should not run in favor of one creditor at the expense of another, while the law, acting for all, is administering the assets. If the assets are sufficient to pay all, including interest, it must be paid; for as against the corporation itself interest should be allowed before the return of any surplus to the stockholders." This clearly states the difference between the relation to each other of creditors all looking to an insufficient fund, and between the creditor and the debtor. In the present case we are not called upon to decide whether the rule of stopping interest where payment is claimed from the fund, even though the debts are of different dignity, will be adopted in this State. Where the statute makes stockholders

liable for the contracts, debts, or engagements of the corporation, or for those held by a certain class, like depositors in a bank, to a certain limit, up to such limit interest on such debts may be recovered as well against the stockholder as against the corporation. Within the statutory limitation, the stockholder is bound for the whole debt, not for a part of it.   This rests on a different basis from the matter of equitable distribution of a fund too small to pay all.   Richmond v. Irons, 121 U. S. 27 (7 Sup. Ct. 788, 30 L. ed. 864); In re Warren, 52 Mich. 557 (18 N. W. 356); Wells, Fargo Co. v. Enright, 127 Cal. 669 (60 Pac. 439, 49 L. R. A. 647); Jones on Insolvent & Failing Corp. § 329..

In this State the entire subject has not been very fully discussed, though there have been several cases involving the recovery of interest. In *Lane* v. *Morris,* 10 *Ga.* 162, supra, where the statutory liability of stockholders was for the ultimate payment of bank bills, it was held that interest was recoverable on the amount of the bills, but only from the time of demand upon the stockholder for payment, owing to the nature and purpose of a bank bill. The commencement of suit was treated as the equivalent of a demand. The rule as to not allowing interest in favor of one party entitled to share in an insufficient fund, to the detriment of another, seems to be recognized in *Johnson* v. *Moon,* 82 *Ga.* 247 (10 S. E. 193). In *Sparks* v. *Lowndes County,* 98 *Ga.* 284 (25 S. E. 426), it was held that executions for taxes accruing during the time when a railroad was operated by a receiver bore interest. This was based on the ground that the tax was levied by the sovereign power, and the statute provided for interest on tax executions. It was also said that the road was operated by a receiver and produced an income sufficient to pay the taxes. In *Wheatley* v. *Glover,* supra, the interest referred to was not on claims furnishing the measure of the liability of the stockholders, but interest on the amount of such liability from the date of suit for it. In *Central Bank & Trust Corporation* v. *State,* 139 *Ga.* 54 (76 S. E. 587), it was held that where a State depository made a contract with the State whereby it agreed to pay a certain rate of interest on daily balances on deposits by the State, and the bank subsequently became insolvent and a receiver was appointed, the State was entitled to have paid to it by the receiver the principal sum due and interest at the contract rate to the date of the appointment of

the receiver, and seven per cent. (the legal rate) thereafter. There was no discussion as to whether the State, as a contracting party, was entitled to interest from the fund to the injury of other creditors, or whether the priority of the State's status as a creditor affected the right to get interest. As to the change in the rate, it seems that the appointment of the receiver, terminating the system of daily balances applicable to a going concern, was treated as also ending the contract rate of interest and fixing the status of the claim as one due and bearing the legal rate of interest. Five Justices presided in that case, the present writer being disqualified. Two dissented as to the rate of interest allowed.

From what has been said it follows that interest on deposits was a proper element in fixing the amount for which the stockholders could be sued. No special question as to the rate or amount of interest due on such deposits evidenced by books or certificates is now for determination. There was no error in declining to revoke the order authorizing the receivers to bring suit against the stockholders, or in refusing to dismiss that suit.

8. It was argued that the stockholders were not liable for the fees of attorneys 'for bringing the suit against them. But the question of taxing the fees was reserved for future determination. There are some general allegations as to previous payments of large fees to attorneys, and the impropriety of taxing the general funds with the payment of the present fees. They have not been taxed yet; and we are not prepared to hold that it is made to appear from the record before us that the court erred in fixing the amount of the fees for this suit, reserving the question of where to tax them.

9. The plaintiffs in error prayed for the revocation of the order allowing the receiver to compromise or settle with stockholders who might be willing to do so at a specified amount. A court exercising equitable jurisdiction can authorize a compromise by a receiver of bad or doubtful claims against others, where it is for the interest of the estate. 34 Cyc. 257 (11); *McGregor* v. *Third National Bank,* 124 *Ga.* 557 (4), 562 (53 S. E. 93). In view of the earnest denial by the plaintiffs in error that there is any liability on the part of the stockholders, and their assertion that, if there is any liability, it is for less than is claimed, and of the vigorous contest which they are making on this subject, they are hardly in a position to say that the liability is clear and not doubtful. Under

the terms of the charter a settlement with one stockholder would not increase the liability of another. The only parties complaining who claim to stand as depositors are representatives of a deceased person who was a stockholder and also a depositor. They joined in denying liability on the part of stockholders to suit by the receiver. Moreover, there are many stockholders, some alleged to be insolvent, and some appearing in the suit filed by the receivers to be non-residents. Other contingencies were also alleged by the receivers. The time allowed for settlements to be made was short, and was apparently fixed so as to probably save litigation. A court should not in effect give away assets or solvent and valid claims necessary for the discharge of debts. But we can not say that such is the case here. Nor can it be declared that it was made to appear that the presiding judge abused his discretion or erred in declining to revoke the order authorizing settlements.

*In the first case, judgment affirmed. In the second case, writ of error dismissed. All the Justices concur, except Fish, C. J., absent, and Evans, P. J., disqualified.*