**FULTON NAT. BANK OF ATLANTA et al.
v. GORMLEY, Superintendent of
Banks.***
**In re ARTHUR.**
**No. 8857.**

Circuit Court of Appeals, Fifth Circuit.

Nov. 3, 1938.

R. J. Bacon, of Albany, Ga., for appellants.

Olin Hammock, of Shellman, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

*Rehearing denied Dec. 10, 1938.

SIBLEY, Circuit Judge.

Thomas R. Arthur is seeking relief under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. Fred D. Arthur is the transferee from Fulton National Bank of certain claims against the debtor, and is appealing along with him and Fulton National Bank from the allowance as a valid claim of an execution issued April 19, 1932, against Thomas R. Arthur by R. E. Gormley, Superintendent of Banks of Georgia, to enforce a stockholder's liability on the part of Thomas R. Arthur because of shares of stock in the failed Shellman Banking Company which he held, not as an original subscriber but as a transferee.

A motion is made by Fulton National Bank to be stricken as a party since it has no interest in the litigation. It joined in the petition for appeal, and in the assignments of error, but not in the cost bond given by the other appellants. Its appeal would appear to be incomplete, but it has no interest in the case, having assigned to Fred D. Arthur all its rights long before the judgment appealed from. We see no reason why it should not be stricken as a party, and it is so ordered.

Fred D. Arthur and Thomas R. Arthur gave a cost bond with security which was approved by the judge during the time allowed for appeal. After the time allowed for appeal they each made affidavit and were permitted by the judge to proceed in forma pauperis "in so far as they are permitted by law to do so where security for costs has been given." A motion is made to dismiss their appeal because of these facts. We see no ground for dismissal. So far as appears, the bond given stands, and the surety is liable for the costs. The belated effort to proceed in forma pauperis may be treated as surplusage. That the record and brief have not been printed in compliance with our Rules is our affair. We waive it.

Another ground urged for dismissing the appeal is that while it was taken in due time after the order of March 14, 1938, that order is a reaffirmation of a like order made April 27, 1937, which was not appealed from but was sought to be reconsidered by a proceeding begun in December, 1937. It is argued that the order of April 27, 1937, became entirely final and conclusive when not appealed from. But the Bankruptcy Act expressly provides for the reconsideration of allowed claims. 11 U.S.C. A. § 11(2). The allowance is ambulatory until the bankruptcy case is closed. The judge appears to have reconsidered this claim, for his judgment is not one dismissing the petition to reconsider but "It is further ordered that the claim of the Superintendent of Banks *is hereby allowed,* subject to reduction in such an amount as debtor may show is not necessary to pay depositors or to equalize stockholders who have paid assessments." The judgment does more than allow the claim, for it gives the objector leave to make a showing to reduce it. It is a new judgment and a new foundation for appeal.

The great question is whether the charter of the Shellman Banking Company imposes double liability only on the original subscribers for its stock or also on transferees of it. The charter is a legislative Act passed in 1887. Its first section incorporates the named organizers, "their associates, successors and *assigns."* Section 3 provides for opening "books of subscription" to the capital stock, and a "meeting of said subscribers" to elect directors "from among the stockholders". Section 5 provides: "Said stock may be transferred on the books of the Company." "In all meetings of said stockholders each share of stock shall entitle the holder thereof to one vote." It thus appears that the terms "subscriber", meaning an original taker of stock, and "stockholder", meaning a holder of stock by any means, were used with discrimination, and that assignments and transfers of stock were in full contemplation. Section 7 follows, reading in part thus: "Said corporation shall be responsible to its creditors to the extent of its capital and assets, and *each stockholder* shall be individually liable for all the debts of said corporation to the extent of *his or her unpaid shares of stock,* and *said stockholders* shall be further and additionally individually liable equally and ratably and not one for another as sureties, to depositors of said corporation for all moneys deposited therein in an amount equal to the *face value of their respective shares of stock;* it being the true intent and purpose of this section of this Act that as to depositors, for all moneys deposited with said corporation, there shall be an individual liability upon *such stockholders* in said corporation over and beyond the *par value of his or her original shares* of stock equal in amount to the face value of said shares of stock." (Italics supplied.) The natural in-

terpretation of these words is that "said stockholders" and "such stockholders" refer back to the expression first used, "each stockholder". This is supported by the use of the possessive "his or her" instead of "their". No mention is made of subscribers. There was no female among the original incorporators. The additional liability was to attach to each person of either sex who should hold stock. The liability "to the extent of his or her unpaid shares" does refer originally to subscribers, but that liability is assumed by a transferee of unpaid stock. Crawford v. Swicord, 147 Ga. 548, at page 552, 94 S.E. 1025; Fouche v. Merchants' Natl. Bank, 110 Ga. 827, at page 836, 36 S.E. 256. So is the additional liability to depositors to the extent of the par of the stock. It is more reasonable that current stockholders should be bound to current depositors than that present depositors should look to subscribers of fifty years ago who have long since parted with their stock and may be insolvent or dead. If present stockholders are not to be held, the incentive to good and honest management arising from this liability would be lost. The reference to the par value of "original shares" in the explanatory clause makes some trouble, but the meaning is "original par value of the shares". We should thus construe this Act as an original question, but it is really determined by two decisions of the Supreme Court of Georgia. The identical provisions were copied by the Legislature of 1890 into the amended charter of the Exchange Bank of Macon, and on its failure twenty years later no contention was even made that only original subscribers were liable. "Stockholder" is the only word used throughout a long opinion. Lamar v. Taylor, 141 Ga. 227, 234, 80 S.E. 1085. In 1893 the Legislature again copied the identical provisions into a general law for the incorporation of banks, and upon a most careful analysis they were construed to fix liability on "each stockholder" and not merely the original subscribers. Crawford v. Swicord, 147 Ga. 548, 94 S.E. 1025. Some of the decisions on other special charters differing in their precise words are not easy to reconcile, but we feel well supported by the construction made of these very provisions in the Crawford Case.

There is a contention made that in a litigation in the State court, Thompson v. Shellman Banking Co., 180 Ga. 495, 179 S. E. 75, the Superintendent's claim against Arthur was adjudicated by a necessary implication. Since we sustain it directly, we need not inquire into the effect of that judgment. It may be noted, however, that in that litigation Arthur expressly admitted his liability and the validity of the execution against him, and he listed it without exception among his debts when he sought relief in bankruptcy.

It is next urged that the stockholders' additional liability under special legislative charters was abolished by an Act approved March 31, 1937, Laws Ga.1937, p. 429. Another Act approved March 15, 1935, Laws Ga.1935, p. 103, made after the insuring of bank deposits had been generally provided for, took out of the general law for the incorporation of banks the provision for additional liability of stockholders to depositors by amending Georgia Code, § 13-1901; but Section 3 of the Act was "This Act * * * shall not affect banks or the liability of the stockholders of banks which have, before the approval of this Act, been taken over by the Superintendent of Banks for liquidation". Now the Act of 1937, Laws Ga.1937, p. 429, amended the same section of the Code by inserting after the words "bank incorporated under this title" the words "or incorporated under any prior general law for the incorporation of banks or under any special legislative charter", and by adding the restrictive word "only" after the words stating the individual liability of each stockholder for the unpaid balance on his stock. There was the usual repeal of conflicting laws. We are of opinion that this Act of 1937 is in pari materia with that of 1935, and must be construed with it to effect the reasonable legislative intent. That intent was to place all banks for the future, no matter what the origin of their charters, on the same footing as respects the stockholders' liability, abolishing the additional liability to depositors. But it was not the purpose to repeal Section 3 of the Act of 1935 which preserved that liability as to banks already in liquidation. That section stands as a valid exception. The depositors of failed banks had no deposit insurance, and the stockholders' liability was a substantial part of their security. It may be doubted if the Legislature could deprive them of it after it was ripened by the bank's failure. We are satisfied that such was not intended by the Acts under discussion.

It is lastly urged that the judge should not have put the burden on the debt-

or to show that the full amount assessed against him was not needed to adjust his liability. It must be remembered that the Superintendent is not proving his claim as an open liability of this stockholder, but as one evidenced by an execution issued and recorded pursuant to law several years before the bankruptcy. While not issued upon a court judgment, it is an official act which carries a presumption of its correctness. Moreover, it had already been allowed by the bankruptcy court, and the bankrupt was seeking to reopen the allowance. The judge refused to expunge the claim in toto, but he left the door open to the debtor to prove, if he can, that the claim is for too much. The debtor cannot complain that he is given the burden as a condition of this relief. The processes of the court are at his disposal to get all that the Superintendent has or knows to assist him.

The judgment of the District Court is affirmed.