HART, Supt. of Banks, Substituted Plaintiff, v. GUARDIAN TRUST Co., et, Defendants.

Common Pleas Court, Cuyahoga County.

No. 438880.   Decided December 7, 1945.

**OPINION**

By McNAMEE, J.

This is an action by the Superintendent of Banks of the state of Ohio, as liquidator of the Guardian Trust Company, against former directors of the insolvent bank. The action was instituted on December 30, 1935 against sixty-three directors. By virtue of dismissals, for reasons not necessary to be considered here, there remain thirty-three directors, as parties defendant.

After more than nine years of litigation concerned with motions addressed to the form of the pleadings, this cause now comes before the court on demurrers to the fourth amended petition, which contains ninety-seven causes of action and is three hundred and eighty pages in length.

No general outline, adequately describing all of the manifold charges against the directors is possible within the short

compass of a preliminary statement. Prefatory to such detailed examination of the alleged derelictions of the directors as may be necessary in considering the various grounds of demurrer, it will suffice to classify the alleged breaches of duties as relating to:

(a) Disbursements of funds of the Bank in the form of loans and advances to the Hollenden Hotel Company at times when the latter corporation was a wholly owned subsidiary of the Bank.

(b) Similar disbursement by the New England Company, also a wholly owned subsidiary, in the form of loans and advances to, and for the benefit of, the Hollenden Hotel Company.

(c) The organization and operation of the Vincent Building Company for the purpose of erecting an annex to the Hollenden Hotel.

(d) Transactions connected with the management of fiduciary assets.

(e) Unlawful declaration of dividends.

The direct and known losses are alleged to be in excess of four million dollars, and plaintiff in addition seeks consequential damages arising from the insolvency of the Bank.

The issues presented arise upon the demurrers of Petrequin and twenty-two other defendants. Separate demurrers also have been filed by other defendants which include the same grounds as the Petrequin demurrer but also challenge the sufficiency of the fourth amended petition on additional grounds. This memorandum will be limited to a consideration of the grounds of the Petrequin demurrer. However, the rulings and comment herein made will govern the separate demurrers of other defendants to the extent that they include the same grounds. The bases of the Petrequin demurrer are:

(1) That there is a misjoinder of parties plaintiff, in that plaintiff alleges he is bringing the action in several distinct capacities and rights;

(2) That several causes of action are improperly joined to the extent that plaintiff attempts to recover damages for deceit of others than the bank.

(3) That every alleged cause of action is barred by the appropriate statute of limitations; and,

(4) That excepting causes 52 to 58 inclusive, all other causes of action fail to allege facts sufficient to constitute a cause of action.

MISJOINDER OF PARTIES PLAINTIFF, AND MISJOINDER OF CAUSES OF ACTION:

The first two grounds may be considerd together. Defendant's position on these points is stated as follows:

230

"The defendant's objection to the several capacities and rights in which the plaintiff alleges he brings the action is unqualified but the defendant's objection to the improper joinder of causes of action is limited to the point that the plaintiff alleges a right to damages for deceit of himself and unidentified creditors and shareholders of the bank."

Plaintiff alleges that he brings this action on behalf of the Bank "and its depositors, creditors and stockholders." This conforms with the terms of §710-95 (7) GC which authorizes the Superintendent to institute any suit against the directors which the Bank, its stockholders or creditors might institute and maintain.

The Superintendent, is plaintiff in but a single capacity. He brings this action as the assignee, by operation of law, of the Bank. He sues as a statutory receiver. No claim is made on behalf of any individual, creditor or stockholder, nor is the Superintendent asserting rights on behalf of any particular group of creditors or stockholders. The alleged liabilities of the directors, constitute assets of the Bank which passed to the Superintendent as its legal representative. The claims asserted in the fourth amended petition are such as the Bank, had it remained solvent, would have had the right to enforce. If the alleged derelictions of the directors caused particular losses to a !creditor or stockholder or to particular groups within those classes, the right to recover for such losses would be assets of the creditors or stockholders. But where, as here, the alleged maladministration of the directors caused losses to the corporation, the right to recoup such losses is a corporate asset. Stewart v. Ficken, 151 S. C. 424, 149 S. E., 164.

"The tort liability of officers of a bank for neglect in the conduct of its affairs and for mismanagement is an equitable asset of the bank and passes to its receiver on its insolvency along with other assets."

Corporation Com. v. Merchants' Bank & Trust Co., 193 N. C., 113, 136 S. E., 362.
In Campbell v. Watson, 62 N. J. Eq., 396, 407, it is said upon insolvency of a bank its creditors

"become the cestui que trustent of the receiver entitled to enforce all the rights of the corporation and to collect its assets of every nature, included in which is the right to claim damages for the negligence of its directors."

It is to be noted in the above cited case, the court declares the right of the creditors to enforce **"all rights of the corporation."** That is precisely what is attempted here by the Superintendent. He acts for and on behalf of the creditors who are the cestuis que trustent of the corporate assets which passed to the Superintendent as statutory receiver. To the extent, if at all, that the value of such assets ultimately exceed the amount necessary to liquidate the claims of creditors, the Superintendent holds them in trust for the stockholders. Therefore the allegation that the Superintendent brings this suit on "behalf of the creditors and stockholders" while technically surplusage, is entirely consistent with the nature of the claims asserted which are for wrongs done to the Bank by its directors.

It is plain that no action is brought by the Superintendent in any capacity except as liquidator of the Bank.

The allegations in the inducement, with respect to the misleading system of bookkeeping and misleading reports, are incorporated in most of the causes of action, but as stated by this Court, in ruling upon motions of certain defendants, "there are no averments that the Superintendent of Banks, creditors or stockholders relied upon such a 'system' or on such 'reports' to his or their injury or damage."

There are no causes of action founded upon "deceit". This fact is conceded by plaintiff who states in his brief:

"This neglect would make it difficult to answer in short compass the claim of the defendant, were it not for the fact that no Cause of Action is brought for 'damages for deceit of' anyone."

There is no misjoinder of causes of action arising from actions brought by the Superintendent for "deceit". The first two grounds of the demurrer are overruled.

The last two grounds of the demurrer will be considered in their reverse order.

ARE THE FACTS ALLEGED IN EACH OF THE CAUSES OF ACTION SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION?

(a) Causes of action 1 to 19 inclusive, and 21 to 32 inclusive. The above numbered causes of action relate to disbursement of funds of the bank and its wholly owned subsidiary, the New England Company, to, and for the benefit of the Hotel Hollenden Company.

It is apparent that the allegations of each and all of these causes state facts sufficient to constitute causes of action.

A detailed exposition and analysis of the alleged operative facts is unnecessary. It is sufficient to state that in these cases, it is alleged that at times, after the Guardian Bank, first as trustee for the bond holders and later in its unqualified corporate. capacity, had acquired the stock of the Hotel Hollenden Company and was operating and managing the same, the directors ratified and approved disbursements by the Bank, in the form of loans and advances to the Hotel Company. It is alleged in substance that these loans and advances were ratified and approved by the directors with knowledge of the precarious financial condition of the Hollenden Hotel Company and in the face of known signals of financial danger. Many of these. advances were authorized or approved while the Hotel Hollenden Company was operating at a loss and for the purposes, among others, of enabling it to pay taxes, sinking fund requirements and ground rentals, required by the terms of its ninety-nine year lease. Other advances were made for repairs, improvements and renovations of the hotel property, and also to enable the Hotel Company to meet the interest charges and principal payments on its bonds. Advances were made by the New England Company, a wholly owned subsidiary of the Bank, for some of the above purposes, and in addition thereto for the purchase of bonds of the Hotel Hollenden Company, which, it is alleged, the directors, knew had no intrinsic value.

It is further alleged that the directors relinquished and abandoned all control of the New England Company, and failed to take action to prevent that subsidiary of the Bank advancing monies to the Hotel Hollenden Company.

Each of these causes of action sets forth the specific amount of the alleged direct loss to the Bank resulting from the claimed dereliction of defendant directors. The total of the losses set forth in these causes amounts to $2,465,222.36. In the absence of countervailing evidence, proof of the allegations in these causes of action would support a recovery. The Court therefore holds that causes numbered 1 to 19, inclusive, and 21 to 32, inclusive, state facts sufficient to constitute causes of action.

(b) 20th cause of action.

The allegations of this cause describe the means adopted to transfer the loans and advances to the Hotel Hollenden Company, from the Bank to the New England Company. It is alleged that this transfer was accomplished to conceal the fact that more than the statutory permissible amount had been loaned by the Bank to one borrower. However, the gist of this action is the alleged failure of the directors to collect some part of the then existing indebtedness of the Hotel

Hollenden Company to the bank. This indebtedness amounted to $1,350,000.00 and represents the total of the direct losses set forth in the first nineteen causes of action. In effect the directors are charged with failure to recoup some part of the total losses occasioned by their prior wrongful acts. It is not alleged that an additional loss resulted from a new breach of duty. No claim is made that the operative facts of this cause augmented the losses set forth in the previous causes of action. This is not a case where the existing indebtedness of the Hollenden Hotel Company arose, notwithstanding proper care and diligence on the part of the directors. If the loans and advances representing the losses of the first nineteen causes, were in all respects properly made, a negligent failure to collect them might be actionable. But a mere failure by defendants to minimize the losses created by their wrongful acts does not constitute a distinct cause of action. It should be added that the charge of actionable neglect is predicated upon the conclusory averment that after January 1, 1929 the Hotel Hollenden Company "could, if action had been taken against it, paid some of the obligation." This vague and indefinite allegation is in apparent contradiction of the facts as alleged in other causes of action, notably, causes numbers 19, 21, 23 and 33.

To obviate the inconvenience of redrafting the fourth amended petition, the allegations of this cause, which are included by reference in subsequently stated causes, may remain in the pleading.

For the aforesaid reasons, the demurrer to this cause is sustained.

(c) **33rd cause of action.**

This cause of action is an aggregation of all the operative facts set forth in the preceding thirty-two causes.

In addition to reciting the total of the known pecuniary losses resulting from the preceding causes, plaintiff alleges in substance that the combined effect of such losses and the specific acts complained of caused additional consequential damages resulting from the insolvency of the Bank. In this cause it is attempted to state a claim for consequential damages as a separate cause of action. The demurrer to this cause of action is sustained on the ground that the accrual of consequential damages does not give rise to a separate cause of action.

For further elaboration of the reasons in support of this ruling reference is hereby made to the relevant statements of the Court in ruling upon the similar but all inclusive 97th cause of action.

**(d) 34th cause of action.**

Unlike the 33rd and 97th causes of action, the statement of this cause precedes the recitation of the multiple causes of action embraced within its terms.

It includes the operative facts of the 35th cause of action which accrued prior to the insolvency of the Bank, as well as the operative facts of cause No. 36, which did not accrue until three and one half years after the Bank went into liquidation.

In addition to the consequential damage arising from insolvency, plaintiff pleads a known pecuniary loss of $789,500.00. In the 35th cause he claims a definite loss of $614,500.00 and consequential damages in addition, but in the 36th cause of action he pleads only a specific loss of $175,000.00. Thus, in the two latter causes he subdivides the known pecuniary loss set forth in the 34th cause of action, but claims consequential damages in only one of the separate causes that follow.

It is difficult to understand plaintiff's attempt to combine the acts and losses of the 35th and 36th causes of action, in the 34th, except upon the postulate that the combined losses caused the insolvency of the Bank. Manifestly the 36th cause of action accruing in December, 1936 could not be an efficient cause of insolvency, either singly or in combination with cause No. 35, and it is the apparent claim asserted in the 35th cause of action that insolvency resulted from the single transaction therein referred to. Yet, in paragraph forty-two of cause No. 34, the alleged consequential damages, as well as the specific losses, are directly related to the operative facts of both causes 35 and 36.

This appears to be an ineffectual attempt to plead insolvency as the gist of the action. It is impossible to determine when the alleged single cause of action accrued. Consequently for the reasons assigned in support of the ruling upon the demurrer to the 97th cause of action, the demurrer to this cause of action is sustained.

Inasmuch as the 35th and 36th causes of action include by reference many of the allegations of the 34th cause, the statements of this cause of action may remain in the pleading as an introduction to the two following causes.

**(e) 35th cause of action.**

In this cause plaintiff seeks recovery for the damages sustained by reason of the alleged wrongful acts of defendants in knowingly violating the provisions of §710-108 GC.

It is charged that by investing the funds of the New England Company, a wholly owned subsidiary of the Bank, in the Vincent Building Company for the purpose of erecting an

annex to the Hollenden Hotel, the Bank sustained a direct loss of $614,500.00 and additional consequential damages flowing from the insolvency of the Bank. The Court is of the opinion that the separate corporate identities must be disregarded and that a good cause of action is stated.

Notwithstanding the comment heretofore made by the Court of Appeals to the effect that no specific loss is alleged in this cause of action, it clearly appears that plaintiff alleges a definite direct loss of $614,500.00. He also claims additional consequential damages. **Sec. 710-67 GC** provides that directors who knowingly violate any of the provisions of the Banking Act (which includes **§710-108 GC**) shall be liable for all damages sustained by the Bank. This provision is adequate warrant for the inclusion of a claim of consequential damages in addition to the specific loss alleged. Even though the additional damages sought may not be recoverable, such a claim does not render this cause of action bad on demurrer. 15 Am. Jur., Sec. 310, pages 752-753. (Cited and quoted in connection with Cause No. 97.)

(f) **36th cause of action.**

Plaintiff charges that the Directors knowingly and wilfully caused the Bank to act beyond its corporate authority in permitting the New England Company to guarantee payment of the bonds of the Vincent Building Company. A direct loss of $175,000.00 is claimed. The Court is of the opinion that a cause of action is stated. Searching the record it appears that in the original petition plaintiff prematurely sought recovery on this transaction. However, the amended petition contains the statement of the operative facts substantially as included in the fourth amended petition. This is true also of the second and third amended petitions.

Although no new process was issued upon these amended pleadings, defendants, by filing motions to strike these pleadings from the files, must be considered as having entered their appearances to this cause of action in the fourth amended petition. The demurrer therefore will be overruled.

(g) **37th to 51st cause of action inclusive.**

In these causes defendant directors are charged with either authorizing, or ratifying and approving, the purchases of bonds or land trust certificates from fiduciary estates for which the Bank was acting as executor, administrator, guardian or trustee. The directors are also charged with either approving or ratifying payments of interest and ground rentals for and on behalf of the obligors of the described securities. It is alleged in substance that the purchases and advances of interest and ground rentals were made without any obligation upon the Bank so to do, and that the Bank's action in

this regard was for the benefit of the estates holding said securities. The directors are charged with knowledge of defaults of the obligors of the securities at the times the transactions were approved and with breaches of duty to the Bank. Specific losses are set forth in each cause. It is therefore held that each of the above numbered causes state facts sufficient to constitute a cause of action.

(h) **52nd to 58th causes of action inclusive.**

Petrequin and the other defendants who join in the demurrer filed by him, do not claim that the allegations in these causes are not sufficient to constitute a cause of action.

Other demurrers, however, do challenge the sufficiency of the allegations thereof. In each of these causes the directors are charged with wilfully and knowingly declaring and causing dividends to be paid out of capital assets and not out of earnings. There also appear somewhat lengthy allegations describing an alleged misleading system of bookkeeping, but it is unnecessary to further review the allegations set forth in these causes.

The Court holds that in each of them facts sufficient to constitute a cause of action are stated.

**59th cause of action.**

The burden of plaintiff's complaint in this cause is that the directors, by action taken in 1925 and reaffirmed in 1929, delegated to the officers and employees of the Trust Department, the discretionary power of determining whether to retain or dispose of shares of the Bank's capital stock which were held in estates of which the Bank was Trustee. It is alleged that pursuant to said authorizations the officers and employees of the Trust Department retained shares of the Bank's capital stock in such fiduciary estates and invested funds of said estates in additional shares of the Bank's stock, in accordance with the rights granted to share holders, and thereafter retained the same in said fiduciary estates.

Successor Trustees of the aggrieved fiduciary estates have filed claims with the liquidator in amounts equal to the value of the bank stocks as of the time it is claimed the stock ought to have been sold by the Bank. These claims are upon the ground that the retention of said shares of its own stock, by the Bank, as fiduciary, constituted a breach of its duty of undivided loyalty. A total of twenty claims, amounting to $573,117.50 are set forth.

In paragraph 21 of the this cause it is specifically alleged:

"None of said claims appears upon the books of the Bank as an obligation of the Bank, and plaintiff has been compelled to investigate and study the facts set forth in said claims for

the purpose of determining whether or not said claims should be approved. This investigation has not been completed, and plaintiff is unable at the present time to state whether any particular claim should be allowed or rejected."

In paragraph 22, the following allegations appear

"Although it is impossible to state which particular claims will be allowed, and which fiduciaries and beneficiaries are creditors of the Bank, plaintiff will be compelled to allow and approve some of said claims, and to recognize some of said fiduciaries and beneficiaries as creditors of the Bank."

Plaintiff further claims to have paid expenses of said investigation from the liquidating assets and avers that he will be compelled to pay additional sums to complete the same. He also alleges that he will be required to pay liquidating dividends "on all of the claims finally approved and allowed by him."

In the concluding paragraph of this cause, plaintiff states that it will be impossible to determine the amounts required to pay the expenses of investigation or the amounts necessary to pay the claims eventually to be allowed, without an accounting. In short, plaintiff claims that the director's failure to direct and supervise the management of the Trust Department in respect of the retention and disposition of shares of the Bank's stock in fiduciary estates has resulted in the presentation of claims against the bank, which he is investigating, and some of which, he will be required to allow. Excluding the allegations relating to expenses of investigation, there is no averment that the Bank had sustained any loss at the time of the filing of the fourth amended petition. There is no allegation that any of the claims had been allowed. Plaintiff is not here attempting to implead the directors as parties defendant in a suit against him by the Successor fiduciaries. The cause attempted to be asserted is predicated upon plaintiff's right, if any, to recover for losses which were occasioned by the defendants' derelictions of duties as managers of the fiduciary estates of the Bank. This cause rests upon the premise that the Bank, being constructively or secondarily liable to the claimants for breach of trust, has a right of recovery over against the directors as the persons actually and primarily liable. This is in the nature of a claim based upon either subrogation or indemnity.

As a general rule, it may be said that a cause of action accrues at the moment of a wrong, default or delict by the defendant, and the injury to the plaintiff.

238

1 American Jurisprudence, Sec. 60, pages 451, 452.
**Minster Savings & Loan v. Laufersweiler, 67 Oh Ap 475.**
An exception to this rule is recognized in those cases where an act may not be legally injurious until subsequent events occur:

"But if an act is not legally injurious until certain consequences occur, it is not the mere doing of the act that gives rise to a cause of action but the subsequent occurrence of damage or loss as the consequence of the act, and therefore in such case, no cause of action accrues until the loss or damage accrues."

·1 American Jurisprudence, Sec. 60, page 452.

Again, where defendants' wrong is a breach of duty to a third person, for which plaintiff is compelled to respond upon the doctrine of constructive or vicarious liability, the plaintiff's claim against the defendant accrues when the former has paid or become liable for the payment of the third party's claim. In **38 O. Jur, Section 57, page 306,** the following principle is laid down:

"It is a general principle in the law of indemnity that actual damage must have accrued to the indemnitor in order for him to recover of the person ultimately liable."

· Perhaps the most satisfactory statement in Ohio in respect of the time of accrual of a cause of action, is found in Woolsey v. Trimble, 18 Fed. 2nd, 908, wherein it is declared:

"A cause of action accrues when there is a demand capable of present enforcement, a suing party in existence against whom the demand may be then enforced, and a party in being who has a present right to enforce it."

**Tobias v. Richardson, 5 Ohio C. C. (NS) 74.**
1 O. Jur, Sec. 26, p. 340.
The allegations of this cause fail to disclose that the plaintiff has any demand capable of present enforcement against these defendants. The only alleged loss to the liquidating estate is the expense of investigation. Without passing upon plaintiff's right to claim the appropriate portion of such expense, in connection with an allowed claim, it may be asserted confidently that no action lies for investigating expenses generally where none of the claims has been allowed.

It is a firmly established rule of law that no cause of action arises until a claim has matured:

"A cause of action must be complete before an action can be commenced. The established rule is that one's case must depend upon the rights of the parties as they exist at the commencement of the action. Rights of a plaintiff in a civil action cannot be contingent upon uncertain events, as, for example, the time the writ may be served. No right of action can be said to accrue until the claim or right upon which it is founded has matured."

**10. Jur, Sec. 26, page 340.**
1 American Jurisprudence, Sec. 63, pages 453-454.
1 Corpus Juris Secundum, Sec. 127, page 1282.

An excellent exposition of this principle is to be found in Tobin v. McCann, 17 Mo. App., 481; 125 A. L. R. 617, as follows:

"It is elementary law, that a plaintiff must recover, if at all, on his right of action as it existed at the institution of his suit. One cannot bring another into court and tax him with costs in defending against a non-existent right, upon the ground that a right may be created pending the procedure. There are apparent exceptions to the rule—and they are only apparently such—in cases of bills quia timet, in those where a right already vested has acquired, a further assurance, or where obedience to an interlocutory order changes the original status of the parties. In the most favorable aspect possible for the plaintiffs' case, the present action may be regarded as having begun with the filing of the amended petition. But at that time, the plaintiffs had no right of action for a conversion, since the replevin judgment remained unpaid."

In White v. Miller, 43 Penna Sup., 572, 125 A. L. R. 618, it is said:

"The plaintiff cannot supply the want of a valid claim after the commencement of the action by the acquisition or accrual of one during the pendency of the action, nor can a plaintiff recover in a pending action on a cause of action which occurred after the institution of such action, even though such cause of action relates to the subject-matter of the pending action."

In 9 Corpus Juris Sec. Sec. 636, page 1169, the following proposition is laid down:

"Action cannot be instituted against directors or officers of a bank until after the accrual of the cause of action."

Of direct application to the present action, is the following:

"Where a complaint states several causes of action, some of which have accrued before suit was brought, but others have not, an action may be maintained as to the former but not as to the latter."

1 Corpus Juris Sec. Sec. 127, page 1395.

The question of prematurity of a suit has arisen in several cases where it was sought to enforce directors' liability for losses sustained by the Bank on account of the directors' negligence in respect of improper loans or peculations by officers or employees of the Bank. In all such cases, except one, outside of Ohio, it has been held that suit might be maintained before final liquidation of the loans and their security.

Medford Trust v. McKnight, 292 Mass. 1; Weslocky Quanterman, 123 Ga. 312; 51 S. E. 426; Shannon v. Moberly, 166 Ga. 430; 143 S. E. 582; Campbell v. Watson, 62 N. J. Eq. 396; 50 Atl. 120. Contra: Green v. Knoxville Banking & Trust Co. 133 Tenn. 609; 182 S. W. 244.

Ohio follows the minority rule.

**Nutt v. State ex rel Fulton, 53 Oh Ap 492.**

In all of the foregoing cases the directors' liability accrued immediately upon their misconduct. In each case losses to the corporation are alleged. These cases are to be distinguished from those where the directors' liability, if any, arises from losses to the Bank on account of its being required to pay claims of creditors for which the directors are primarily liable. In the latter type of cases no claim accrues in favor of the bank against the directors before the Bank or its receiver pays or becomes liable for the payment of the third party's claim. Directly in point is the case of Niblack v. Munday, 218 Illinois App. 385. The seventh paragraph of the syllabi of that case reads:

"As to the claims of creditors which have been filed with the receiver of the bank but not yet allowed, a suit by the receiver against the directors of the bank to recover money of the bank alleged to have been lost through their negligence, is premature."

This case was reversed in 297 Illinois, 555 on other grounds but the Supreme Court did not disagree with the proposition above stated.

If the defendant directors committed breaches of their fiduciary duties to the beneficiaries of estates, of which the Guardian Bank was Trustee, such beneficiaries or their successor Trustees would have a right to proceed directly against the directors. In such event, also, the beneficiaries or Successor Trustees, could proceed against the bank or its receiver.

Scott on Trusts, Vol. 3, Section 326.3.

Ohio is one of the states approving the procedural principle, that a third party who sustains an injury or loss as the result of a tort or wrong of an agent, committed while acting within the scope of his authority, may sue either the principal or agent, or both, in separate actions, but that suit does not lie against the principal and agent in the same action. The authorities on this subject are collected and cited in **Losito v. Kruse, 136 Oh St 183.** The last cited case dealt with a situation where the liability arose against both master and servant and lays down the principle that the master may recover from the servant in cases where the former has been required to answer for the servant's wrong:

"For the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against either the master or the servant, or against both, in separate actions. as a judgment against one is no bar to an action or judgment against the other until one judgment is satisfied. **Maple v. Cincinnati, H & D Rd Co., 40 Oh St, 313,** 48 Am. Rep. 685. The plaintiff, in any event, can have but one satisfaction of his claim. But, under such circumstances, there exists the right of subrogation to the claim of the plaintiff and reimbursement upon the part of the master as against the servant, in case the former is obliged to respond in damages for the wrongful act of the latter. Clark v. Fry, supra; City of Zanesville v. Fannan, supra; Morris v. Woodburn, supra; City of Chicago v. Robbins, supra; City of Rochester v. Campbell, supra."

By analogy it would seem that if plaintiff were compelled to respond for the losses sustained by the beneficiaries or Successor Trustees of the fiduciary estates which were caused by defendants' breaches of duty, he would be entitled to recover from the defendants, the amount he was required to pay upon the claims presented. However, as hereinabove

indicated no cause of action accrues until the plaintiff had paid or become liable for payment of the claimants' losses.

Plaintiff contends that the facts as alleged in this cause of action and Causes of Action numbered 59 to 96th inclusive, state causes of action based upon guaranties. The allegations of the pleading do not support this claim. The case of Western Strawboard v. Variety Iron Works, 17 C. C. (NS) 205, cited by plaintiff, is entirely consistent with the views hereinabove expressed. It was held in that case, that the cause of action upon the guaranty accrued at the time the construction of the plant was completed, that is, after the loss had been sustained.

If claims similar to those described in this cause of action had been presented to the bank while it was solvent, and doing business, there would have been no right of recovery by the bank against the directors until the bank paid or became liable for payment of such claims. No different rule applies because the bank is insolvent.

Plaintiff also maintains that this cause is an equitable action for accounting. This claim cannot be accepted as correct. Plaintiff attempts to state a cause of action for the recovery of money. The amount of any damage which may be suffered lies peculiarly within plaintiff's own knowledge and may be definitely ascertained and determined from information which he possesses. Resort to equity is unnecessary for full and adequate relief. As stated in **State ex rel v. House**, **144 Oh St, 238-244:**

"To bring a cause within the jurisdiction of a court of equity, it is requisite that the primary right involved be an equitable right as distinguished from a legal right, or that the remedy at law as to the right involved is not full, adequate and complete. 30 Corpus Juris Sec. 388, Sec. 20."

The demurrer to this cause is sustained on the ground that the cause of action has been prematurely instituted.

### 60th to 96th CAUSES OF ACTION INC.

Basically these causes of action are similar to the 59th cause. The essential difference between them is that in the causes here under consideration, the breaches of trust complained of, arise from the purchase by the bank, as fiduciary of separate estates, of securities of which the bank was seller, joint underwriter or trustee of the issue.

Each of the above numbered causes relates to a different security, and as stated by defendant, Petrequin, in his brief:

"In every one of these cases it is alleged that the bank, not the directors, profited in one way or another. For example,

a number of the differences relate to securities 'which the bank had purchased and later sold to such fiduciary estates at a price in excess of the amount for which the same were purchased.' "

It is alleged that successor trustees or beneficiaries have filed claims with the bank based upon its alleged breach of undivided loyalty as fiduciary. Allegations similar to those appearing in the 59th cause in respect of the incompleteness of investigation and the expenses thereof, are set forth, as are the names of the claimant estates and the amounts for which claims have been filed. Plaintiff also alleges

"plaintiff is unable at the present time to state which particular claim or claims should be allowed or rejected. Although it is impossible to state which particular claim or claims will be allowed, plaintiff will be compelled to allow and approve some of the claims."

Although a total of over six hundred claims, totaling $2,963,530.01 is set forth, it does not appear that any one of these claims has been allowed by the plaintiff. Therefore, for the reasons stated in sustaining the demurrer to the 59th cause of action, the demurrers to each of causes 60 to 96 inclusive must likewise be sustained on the ground that the causes of action therein attempted to be asserted are prematurely brought.

The plaintiff in this action assumed charge of the liquidation of The Guardian Bank in June, 1933, the fourth amended petition was filed in January, 1943. Although a period of almost ten years elapsed between the insolvency of the bank and the assertion of the above causes in the fourth amended petition, plaintiff is unable to state which particular claims, out of the several hundred filed, should be allowed. Defendants can not be compelled to defend against all of these multitudinous claims on the probability that some of them will be allowed during the pendency of the suit.

### 97th CAUSE OF ACTION.

This cause of action covers one hundred and thirty-seven pages of the Fourth Amended Petition, and includes all of the operative facts and transactions which are the subject matter of all of the preceding separately stated causes. In view of the fact that contemporaneously herewith, the Court has sustained demurrers to causes 20, 33, 34 and 59 to 96 inclusive on the ground that no causes of action were stated therein, the 97th cause will be considered as including all

of the operative facts and transactions set forth in all other causes which the court has held to be well stated. Thus, the 97th cause of action will be considered as including transactions set forth in causes one to fifty-eight inclusive, excepting causes numbered 20, 33 and 34.

In the 97th cause of action the directors are charged with establishing and maintaining a policy of subordinating the rights and interests of the bank in favor of others with whom the bank dealt. The various transactions are classified as constituents of the several schemes or plans referred to in this cause. These alleged new factors, however, are expressly or by clear implication included in the preceding separately stated causes and introduce no additional breach of duties, by defendants, into the 97th cause of action.

Referring to this cause of action, plaintiff argues:

"A separate suit or a separate cause of action in a single suit may be brought for each loss and also a suit or **separate cause of action for the breaking of the Bank,** and the ensuing disaster, caused by the cumulation of the acts of the defendants. Indeed, since the injury from the insolvency of The Guardian Trust Company is much greater than the sum of all the items set forth separately, plaintiff would be denied an adequate remedy unless he can recover for the loss incident to the insolvency of The Guardian Trust Company." (Emphasis supplied.)

Manifestly, it is here attempted to assert as a separate cause of action a claim for the alleged consequential damage resulting from the cumulated effect of all the specific acts which are set forth in the preceding causes.

The cardinal rule of damages is full compensation to the injured party. This includes consequential damages, if such damages are direct, not remote or speculative, and are properly pleaded. Consequential damages usually arise after the original injury or loss is sustained, but no new cause of action arises when such consequential damage accrues.

"Consequential damages may flow later from an injury too slight to be noticed at the time it is inflicted. No new cause of action accrues when such consequential damages arise. So far as such consequential damages may be reasonably anticipated, they may be included in a recovery for the original injury, through even at the time of the trial they may not yet exist."

Schmidt v. Merchants Dispatch Transportation Co., 270 N. Y., 287, 200 N. E. 824, 104 A. L. R. 458.

See also **Williams v. Pomeroy Coal Co., 37 Oh St 583.**

Plaintiff's claim in this case is for the consequential damages resulting from insolvency. It is cause rather than effect which constitutes the gist of the legal action. Insolvency may be the result of a single cause or it may be the consequence of several concurring causes but upon either hypothesis, insolvency is the effect of antecedent events. Insolvency, therefore, is not the gist of an action.

In Becker v. Billings, 304 Ill., 190, 136 N. E., 581, the court said:

"* * * his counsel (plaintiff's counsel) say that the bank's cause of action is its right to hold Billings liable for the loss flowing from his failure to perform his duties as a director. This is not a correct definition of the cause of action. The cause of action is not the loss of the bank, and is not the right of the bank to hold Billings liable for the loss. It is the act or omission of Billings which causes the loss, and gave the right to the bank to hold him liable, which constitutes the cause of action."

Plaintiff recognizes the foregoing principles by pleading in the 97th cause of action, as the causes of insolvency, all of the operative facts of the preceding separately stated causes, By this method of pleadingg, however, plaintiff in effect, has split each and all of the preceding causes. First, in the separate causes, he seeks recovery of direct losses, and then restates each of these causes as components of a single all inclusive cause of action for consequential damage.

The rule against splitting causes of action is designed primarily to prevent the institution of several suits upon the same facts. Ordinarily, where split causes of action are joined in the same suit, and the time of accrual of each cause is not material, no prejudice results by permitting such split causes to stand. If the statute of limitations were not in issue in this case, it might be arguable, that no prejudice would result to defendants by considering the allegations of the 97th cause, merely as enlarging the scope of the ad Damnum clause of the fourth amended petition. But the statue of limitations is one of the principal issues raised on demurrer and a determination must be made, whether the allegations of the 97th cause state a good cause of action.

If the 97th cause of action be permitted to stand, what determination shall be made as to the time of its accrual?

This cause is a composite of the preceding separately stated causes which accrued at various times between 1924 and 1932. The statute of limitations commenced to run against these preceding causes at the times the acts complained of therein occurred. This is true, both as to the direct losses alleged and any consequential damage flowing therefrom. The operation of the statute of limitations can not be suspended, as to a single cause of action, to postpone the accrual of a claim for consequential damage. For example, plaintiff would not be permitted to split the first cause of action of the fourth amended petition into two causes consisting of one cause accruing in 1924 for direct loss, and a second cause accruing in 1933 for consequential damage. Likewise, the elements of damage in the 32nd cause of action can not be split into two causes, accruing respectively, in May, 1931 and June, 1933. The same is true, in respect of any other single cause of action preceding the 97th. The principle which proscribes this procedure as to one cause, operates with equal restraint to prevent a similar result, where several separate causes are combined.. It follows that the operation of the statute of limitations can not be suspended to fix the accrual of the 97th cause of action at the time of insolvency in June, 1933. It is impossible to fix any other time of accrual, because the facts alleged in this cause do not give rise to a distinct and independent right of action. The damage referred to therein is inseparable from the preceding separately stated causes, and is not the result of any different combination of facts constituting an actionable wrong. No distinct breach of duties by defendants or any additional invasion of plaintiff's rights is alleged. Furthermore, the concept, that the aggregation of several transactions constitutes one cause of action, is irreconcilable with the fact that each of the several transactions is a separate and complete cause of action.

It is a well recognized principle of procedural law that causes of action which may be joined in one action also may be the subject matter of separate suits. But it seems clear that plaintiff could not maintain one suit on the first fifty-eight causes of action, and also a separate action upon the operative facts of the 97th cause. The gist of each of such actions would be identical, and a determination of one would be res adjudicata of the other. The court therefore holds that the 97th cause of action does not state facts sufficient to constitute a cause of action.

This conclusion is buttressed by considerations which appear upon a search of the record. Plaintiff's original petition contained but one cause of action, and included substantially,

all of the operative facts now set forth in the 97th cause. In November, 1937, this court ordered plaintiff to separately state and number the causes of action in his petition. Plaintiff has attempted to comply with that order by subdividing the allegations of his original pleading into ninety-six separate causes. The order to separately state and number did not authorize the retention, in any subsequent pleading, of one all inclusive cause of · action, in addition to the separately enumerated causes. At the time the order was made, the court held against plaintiff's contention that the Trust Fund theory was applicable under the alleged facts. It must be assumed that the court's ruling, and the reasoning in support thereof, are correct. Therefore, plaintiff can not proceed at law on the several separate causes of action and also in equity on one cause of action embracing the identical operative facts set forth in the several separate causes. Nor may he elect. To permit an election would be to invite a choice that would nullify the effect of the order to separately state and number.

Although it is held that the facts as alleged in the 97th cause are not sufficient to constitute a cause of action, no determination is made as to the measure of liability on the well stated causes of action.

Whether consequential damages of insolvency are recoverable, whether such damages are speculative or remote; whether evidence thereof is admissible under the allegations of the pleading, these and other questions relative to the measure of damages are not determinable upon demurrer. The true guide to judicial action in this regard is set forth in the following statement of principles:

"Effect of Claiming Nonrecoverable Damages.—The fact that the plaintiff in alleging his cause of action ·for damages set forth a claim for damages he is not entitled to recover does not impair his right to maintain the suit; accordingly, a general demurrer is not the proper mode of testing the extent of the recovery to be had or of determining the rule that shall govern in the admeasurement of damages for the injury alleged. This rule applies even though such a complaint states a good cause of action only as to nominal damages—that is, though its allegations are wholly inadequate to authorize the recovery of substantial damages—and though it estimates the damages under an erroneous rule as to their measure or claims other or greater damages than the plaintiff may legally be entitled to recover." 15 Am. Jur., pages 752, 753. Section 310.

### STATUTE OF LIMITATIONS AS APPLIED TO CAUSES OF ACTION 1 to 19 INCLUSIVE AND 21 to 32 INCLUSIVE, No. 34, 37 to 49 INCLUSIVE, AND 51.

Plaintiff maintains that this is an action in equity and that the applicable statute of limitations is §11227 GC, which bars the commencement of suits in ten years after their accrual. He further contends that if this suit be considered an action at law, it would be governed by one of the following statutes, viz: §11221 GC, barring actions on contracts or promises in writing within fifteen years; §11226 GC, which bars actions upon an undertaking within ten years, or §11222 GC, which bars actions on contracts not in writing within six years after the accrual thereof.

Defendants contend that these causes of action are within the terms of §11224-4 GC, being injuries to the plaintiff "not arising on contract or hereinafter enumerated," and that they are barred because the above causes accrued more than four years before the commencement of this suit. Plaintiff challenges these contentions of the defendants, first, by denying that the four year statute applies, and, secondly, by asserting that if this statute is applicable, all of the above causes accrued in June, 1933, or less than four years after this suit was instituted. The questions will be discussed in the above order.

Inasmuch as the primary relief sought is the recovery of money and it is not necessary to determine whether plaintiff is entitled to equitable relief before legal redress is granted, this is not an action in equity. **Lien v. House, 144 Oh St 238.**

Plaintiff seeks to recover a money judgment and his references to the necessity for an accounting rest upon the apparent difficulty in accurately computing the alleged losses. At most, the requests for an accounting are merely auxiliary to the paramount legal relief sought.

"If the primary or paramount relief sought is legal and the equitable redress merely incidental, it is an action at law." **Nordin v. Coulton, 142 Oh St, 277; 51 N. E., (2nd) 717; LaBounty v. Brumback, 126 Oh St, 96; 184 N. E., 5; Lien v. House, 144 Oh St at page 247.**

Even if this suit be considered an equitable action, the limitation statute applicable in cases at law would govern. **Jensen v. Republic Steel, 32 Abs, 29.**

Plaintiff bases his contention in respect of the applicability of either §11221 GC, or §11226 GC, on the premise that the statutory oath of a director is either a "Promise in writing," which brings this action within the fifteen year statute, or that it is an "undertaking of an officer," in which event the

ten year statute would apply. Plaintiff, however, cites no authority construing the statutory oath of a director as a promise in writing, or an undertaking, nor has this Court been able to find any case so holding. On the contrary in Hughes v. Reed, 46 Fed. (2nd) 435, the court took cognizance of an oath of directors similar in term to the oath set forth in this action, but nevertheless held that the liability of the directors arose upon an implied contract.

In McNair v. Burt, 68 Fed. (2nd) 814 the court said:

"To sustain this position he argues that the oath which each director of a national bank is required by 12 U. S. C. A. Sec. 73 to take, that he will diligently and honestly administer the affairs of the bank, and will not knowingly violate, or wilfully permit to be violated, any of the provisions of the National Banking Act (see 12 U. S. C. A. Sec. 21 et seq) is an instrument of writing, within the meaning of the just quoted five year statute of limitations, upon which the cause of action here asserted may be maintained. The suggestion is a novel one, and no authority is cited in support of it. The statutory oath required of national bank directors exacts a solemn pledge and also serves as documentary proof to show who the directors were at any given time, but it does not itself evidence or disclose any contract, obligation, or liability, which is made the foundation for a civil action. This suit must rest, not upon the oath, but upon the statutory and common law right to recover for negligence and dereliction of duty in the management of the bank's affairs." (p. 816)

Clearly neither §11221 GC, nor §11226 GC, applies.

The important question to be considered is whether these causes of action are **ex contractu** or **ex delicto**. A determination of this issue will be decisive of plaintiff's claims in respect of the applicable statute of limitation. Generally there is a clear and marked distinction between causes of action arising upon breach of contract and causes arising on tort, yet there is a twilight zone between the two classes in which it is difficult to determine whether a case belongs strictly to one class or the other. Douglas v. Loftus, 85 Kan. 720; 119 Pac. 74; 74 L. R. A., 915. In 1 Am. Jur., Sec. 50, page 442, the subject is treated as follows:

"In a general way, a tort is distinguished from a breach of contract in that the latter arises under an agreement of the

parties, whereas the tort, ordinarily, is a violation of a duty fixed by law, independent of contract or the will of the parties, although it may sometimes have relation to obligations growing out of, or coincident with, a contract, and frequently the same facts will sustain either class of action."

Many jurisdictions, outside of Ohio, hold that an action against directors of a bank for breach of their fiduciary duties, is an action arising upon an implied contract. Medford Trust v. McKnight, 197 N. E., 649 (Mass); Wallace v. Lincoln Savings Bank, 89 Tenn. 630, and many other cases.

In other foreign jurisdictions the courts hold that such actions sound in tort. Blythe v. Easten, 203 Ala., 692, 85 So. 1; Boyd v. Applewhite, 121 Miss. 879, 84 So. 16. Ohio is in alignment with the latter group. **Minster Loan v. Laufersweiler, 67 Oh Ap, 375;** Lien v. House, supra. See also Jensen v. Republic Steel, supra. The second paragraph of the syllabi of Minster v. Laufersweiler, supra, reads:

"An action by a corporation to recover damages for the **ultra vires** and negligent acts of its former directors and officers is based on the common law rule which renders every agent liable who violates his authority or neglects his duty to the damage of his principal, and such action must be brought within the statutory period set forth in §11224 GC, which provides that an action 'for an injury to the rights of the plaintiff not arising on contract nor hereinafter enumerated' must be brought within four years after the cause of action accrues."

The foregoing proposition was cited and quoted with approval in **Lien v. House, 144 Oh St, 238 (1944).** In the latter case the supreme court extended the quoted principle to an action involving breach of duty by an express trustee.

The duties of an express trustee arise upon an agreement which is contractual in form and essence, yet, in the concluding paragraph of its opinion in the House case, the supreme court said:

"We conclude that since this action is based upon an alleged breach of trust on the part of the defendants, it is one for 'an injury to the rights of the plaintiff not arising on contract nor hereinafter enumerated' and is governed by **§11224 GC,** popularly known as the four year statute."

By its decision in the House case the supreme court has foreclosed further debate upon the question whether a breach of fiduciary duties arises upon contract or tort. Certainly, if a breach of duty by an express trustee gives rise to an action **ex delicto** suits based upon a bank director's breach of duty must be held to be in the same category.

The Court is therefore required to hold that the above causes of action are **ex delicto** and governed by §11224 GC.

### TIME OF ACCRUAL OF CAUSES OF ACTION

Plaintiff alleges that prior to 1923, the officers of the bank (not the directors) established an inadequate and misleading system of bookkeeping; that the directors continued this system in effect for the purpose of concealing the transactions which are the subject of this suit. Plaintiff further alleges "neither the stockholders, creditors or depositors of the bank, nor the Superintendent of Banks discovered the actual and true financial condition of the bank and the correctness and details of the acts and transactions hereinafter set forth until after June 15, 1933."

Although the question is not raised in plaintiff's brief or urged by him in oral argument on the demurrer, the aforesaid allegations present the issue whether lack of knowledge of the existence of a cause of action until after June, 1933, or the alleged concealment thereof, toll the statute of limitations. The law of this state is well settled on both of the foregoing propositions.

"It has long been a well settled rule in Ohio that a person's lack of knowledge of his right of action does not prevent the running of the statute, or postpone the commencement of the period of limitation, until he discovers the facts, or learns of his rights thereunder." **25 O. Jur Sec. 247, page 597; Fee v. Fee, 10 Oh St 469; State ex rel Watson v. Standard Oil, 49 Oh St, 137,** and **Townsend v. Eichelberger, 51 Oh St, 213.**

Concealment of a cause of action does not suspend the operation of the statute of limitations. In 1841 our supreme court declared the law to be that—

"A fraudulent concealment by which the plaintiff has been delayed will not enlarge the time for bringing an action under the statute of limitations." **Fee v. Fee, 10 Ohio, 470.**

To the same effect is **Howk v. Minnick, 19 Oh St, 462.** In the recently decided case of **Minster Loan & Svgs. v. Laufersweiler, 67 Oh Ap 375,** the appellate court, following the two foregoing supreme court cases, held:

"In such case the cause of action accrues at the time the **ultra vires** or negligent acts are committed by directors or officers, whether such acts are known or unknown to the corporation, and notwithstanding the fact that the directors and officers fraudulently concealed the existence of the cause of action." (Paragraph 3 of the syllabus.)

The decision in the Fee case was influenced materially by the court's refusal to apply in a case at law, a principle admittedly applicable in equitable proceedings. In the latter type of cases it was, and is, competent to show fraudulent concealment of a cause of action as a ground for suspension of the statute of limitations, but in the Fee case the court declared that "courts of law have no dispensing power whatever."

In view of our blended system of jurisprudence, the distinction upon which the harsh doctrine of the Fee case rests is not in harmony with the enlightened policy of courts outside of Ohio. While that doctrine is seemingly indefensible in reason and contrary to the weight of authority elsewhere, it has never been overruled in Ohio, and as demonstrated by the rule announced in the Minster case supra, it has recently been applied to a case involving facts similar to the case at bar.

In cases where fraud is the ground of recovery a different rule applies, §11224 GC. Fraud is not the gist of any of the causes of action here under consideration. Plaintiff does not claim that defendants are guilty of fraud. It is not claimed that any of the directors profited personally as a result of these transactions; nor does plaintiff describe the alleged concealment of the causes of action as fraudulent. The concealment is averred to be, the continuance in effect of a bookkeeping system which had been established by the bank and its officers prior to the time of the occurrence of the first transaction referred to in the fourth amended petition. It is not alleged that the defendants designed the alleged misleading bookkeeping system for the purpose of concealing their wrongful acts, or that they directed omissions or falsifications of any of the bookkeeping entries. No claim is made that in recording the transactions in question, there was any deviation from the regular and customary method of recording all transactions of the bank.

It must be held, therefore, that the allegations relating to the alleged concealment and lack of knowledge are not effective to postpone the accrual of these causes of action until after June, 1933.

## WERE THE DEFENDANTS TRUSTEES AGAINST WHOM THE STATUTE OF LIMITATIONS DID NOT RUN DURING THEIR TENURE OF OFFICE?

Upon the assumption that the directors were trustees, plaintiff maintains that the statute of limitations did not commence to run in their favor until the fiduciary relationship was terminated in 1933. In support of this claim plaintiff relies upon Lien v. House, supra. In that case the supreme court held that a cause of action against a trustee of an express trust, for breach of trust, accrued when the relationship as to such trustee terminated, but there is nothing in the opinion or syllabi of that case that warrants an extension of the rule therein announced, to actions against fiduciaries generally, including bank directors.

That corporate directors are not trustees of an express trust so as to suspend the operation of the statute of limitations until their service as directors is terminated is well settled. The rule is stated in Fletcher Cyc. Corp. Vol. 3, Perm Ed. Sec. 1301, page 794, as follows:

"According to the weight of authority no such trust relation exists between a corporation and its officers as to prevent the running of the statute of limitations in favor of the officers."

Cooper v. Hill, 94 Fed. 482; Winston v. Gordon, 115 Va. 899; Wallace v. Tennessee Svgs. Bk. 89 Tenn. 630; Boyd v. Mut. Fire Ins. Co. 116 Wisc. 155; 90 N. W., 1086; 94 N. W., 171; 61 L. R. A., 918, and many other cases.

Plaintiff's contention in this regard must therefore be overruled.

Plaintiff also maintains that the allegations of his pleading disclose continuous fiduciary duties continuously violated and that these alleged facts are effective to postpone the running of the statute of limitations in favor of the directors, until they cease to act as such. As sustaining his position plaintiff cites and relies upon Bowers v. Santee, 99 Oh St, 361; Gillette v. Tucker, 67 Oh St, 106; McWilliams v. Hackett, 19 Oh Ap 416.

While it is true that in the aforementioned supreme court cases there existed the fiduciary relationship of patient and physician, and in McWilliams v. Hackett, supra, the relationship was that of attorney and client, the decisions in these cases did not turn upon the question of breaches of continuing fiduciary duties. The term "fiduciary" is not used in any of these cases.

In its opinion in the Gillette case the court makes passing reference to the relationship of trust and confidence between patient and physician, and in the Bowers case the "mutual confidence" between patient and physician is noted, but as plainly indicated in the syllabi and opinions of these cases, it is the contractual relationship of the parties that is stressed and emphasized. These cases hold that the statute of limitations is enlarged in actions for malpractice by postponing the accrual of the cause of action from the time of the negligent or unskillful act, to the termination of the contractual relationship. This rule has met with vigorous opposition.

In Gillette v. Tucker, supra, the supreme court, divided three to three in upholding the proposition that in an action for malpractice by a patient against physician the statute of limitations did not commence to run until the termination of the professional relationship. A few years later in **McArthur v. Bower, 72 Oh St, 656,** the supreme court, with two judges dissenting, overruled Gillette v. Tucker, and followed the dissenting opinion of the last named case. Again, in Bowers v. Santee, supra, the supreme court, with the Chief Justice dissenting, repudiated the McArthur case and reaffirmed and followed Gillette v. Tucker.

In order to achieve a manifestly just result in the Gillette and Bowers cases the supreme court by-passed the rule that a cause of action accrues at the time a wrong is committed, and also avoided colliding with the established principle, that lack of knowledge of a cause of action does not toll the statute of limitations. That the peculiar exigencies of the patient-physician relationship materially influenced those decisions is clear. The doctrine of those cases was applied in an action by a client against his attorney in the case of McWilliams v. Hackett, supra, cited by plaintiff, but in the more recent and well considered case of **Galloway v. Hood, 69 Oh Ap 278,** the court of appeals for Lucas County on December 22, 1941, expressly held:

"An action by a client against his attorney for alleged nonfeasance in failing to file the clients' workmen's compensation claim within the time allowed accrues at the time the nonfeasance occurs, and is barred by the statute of limitations if not brought within one year from that time."

This division of the appellate courts, on the question of extending the rule announced by the supreme court, to cases involving the relationship of attorney and client, and the repeated dissension amongst the members of the supreme court as to the validity of its more restricted application

in the patient-physician cases, clearly mark the limited scope of the rule. It cannot be fairly extended to the dissimilar factual situation here presented.

In paragraph 2 of the syllabi of Bowers v. Santee, the court expressly designated the malpractice action there under review, as an "action for a breach of contract." As hereinbefore noted, the causes of action in this case do not arise upon contract. Minster Loan v. Laufersweiler, supra; Lien v. House, supra.

## DID THE DEFENDANTS' EXCLUSIVE CONTROL OF THE BANK UNTIL ITS INSOLVENCY TOLL THE STATUTE OF LIMITATIONS?

As an exception to the general rule that statutes of limitation run in favor of directors during their tenure in office, some jurisdictions outside of Ohio, hold, that when all of the offending directors are in exclusive control of the corporation, the statute of limitations does not commence to run until they relinquish control to their successors. Cockrill v. Abeles, 86 Fed. 505; Rankin v. Cooper, 149 Fed. 1010; Ventress v. Wallace, 111 Miss. 357; Adams v. Clark, 22 Fed (2nd) 957; Schilling v. Parman, 35 Fed. (2nd) 780.

In the foregoing cases it is considered decisive, that, while the directors remain in control there can be no assertion of an adverse claim against them by the corporation. Other jurisdictions, outside of Ohio, hold against this exception to the general rule that statutes of limitation run in favor of directors during their continuance in office.

Mobley v. Faircloth, 173 Ga. 808; 163 S. E., 195; 83 A. L. R., 1207; Lyon v. Holton, 14 N. Y. S., (2nd) 436; Pollack v. Warner Bros. 266 App. Div. 118, 41 N. Y. S. (2nd) 225, (May, 1943.).

The authorities sustaining the exception adopt the view that the directors ought not be permitted to plead their inaction during the statutory period of limitation, as a defense to their wrongdoing. The cases which hold against the exception, take the position that the fact the directors were continuously in control does not toll the statute of limitations, in the absence of circumstances showing a morally fraudulent concealment of the cause of action.

In cases where less than all of the directors are sued or where the personnel of the board did not always remain the same, the courts have refused to recognize and apply the exception. Anderson v. Gailey, 33 Fed. (2nd) 589; Hughes v. Reed, 46 Fed. (2nd) 435; McNair v. Burt, 68 Fed. (2nd) 814.

In the case at bar only 21 of the 42 directors named in the fourth amended petition served during the full period covered by all of the transactions referred to therein. These 21 so-called full-period directors are charged with breaches of

duty in all of the causes of action, but the case against the 21 so-called part-period directors is limited to those causes of action which accrued during their respective periods of service on the board. The full period of time in question extends from January, 1923, to the insolvency of the bank June, 1933. Several of the defendants named in the fourth amended petition became directors in the intervening years. Two of them became members of the board in 1930, and one director was elected as late as January, 1931. Other directors joined the board in 1927, 1928 and 1929.

Similar conditions obtained in relation to the 63 directors named in the original petition. There was either a replacement of retiring directors or the addition of new directors in almost every year between 1923 and 1933. In McNair v. Burt, supra, at pages 815 and 816 of the opinion the court says:

"Appellant argues that, whatever statute of limitations is applicable, it did not begin to run until the bank closed, because until then the stockholders and creditors of the bank were without knowledge of its affairs or financial condition. This argument fails when it is recalled that there is no claim of conspiracy or concealment; that bank examiners and the Comptroller of the Currency knew about the conditions of the bank, that the personnel of the board of directors did not always remain the same, since new directors were elected from time to time to represent the stockholders, and that the stockholders themselves always had the right to inspect the books and ascertain the manner in which the affairs of the bank were being administered. Corsicana National Bank v. Johnson, 251 U. S. 68, 40 S. Ct. 82, 64 L. Ed. 141; Curtis v. Connly, supra; Anderson v. Gailey (D. C.) 33 F. (2d) 589; Hughes v. Reed (C. C. A.) 46 F. (2d) 435."

In Curtis v. Connly, 257 U. S., at page 264 Mr. Justice Holmes made the following observations:

"Even if otherwise the statute of limitations would not have run, which we do not imply, knowledge of the facts by the new directors was knowledge by the bank, and none the less that according to the bill they in their turn were unfaithful. It is not alleged that they conspired with the defendants whose case we are considering. They came to the board as the eyes of the bank. Anyone of them having notice was bound to do what he could to avert or diminish the loss. Indeed the bill seeks to charge one of them for not having done his duty. Notice to an officer, in the line of his duty, was notice

to the bank. A single director like a single stockholder could proceed in the courts. Joint Stock Discount Co. v. Brown, L. R. 8 Eq. 381, 403."

In view of the peculiar circumstances of this case the foregoing pronouncements are cogent arguments against holding that the exception is applicable here.

Also in view of the absence of any Ohio case in point, the question presented must be considered in the light of the policy of this state in relation to the interpretation and enforcement of statutes of limitation generally.

As hereinbefore noted, this policy has been one of strict construction, admitting of no exceptions on account of lack of knowledge or concealment of a cause of action.

As stated in 25 **O. Jur. Section 246, page 597,—**

"And, where the statute has created specific exceptions, all others must be deemed excluded. Courts are without authority to annul or change those specified, or to establish others, though in particular cases the ends of justice might seem to be subserved if this were done."

It must be considered also that prior to the insolvency of the bank, its stockholders could have brought derivative actions against the directors on the above causes. The full period of four years had run against some, but not all of these causes at the time of insolvency in 1933. If, notwithstanding the directors' control, the statute of limitations would have run in their favor in an action brought by a stockholder, it would seem to follow logically that under similar circumstances, the statute of limitations would run in favor of the directors where a corporate action was brought by the receiver of the bank.

In Pollack v. Warner Bros. Pict., 41 N. Y. S., 225, 266 App. Div. 118, the court held as follows:

"A stockholder's derivative cause of action against directors for dissipation of the corporate assets by wrongful payments was for waste of corporate assets and limitation statute for injuries to corporate property applied and ran from the date of the commission of such separate wrongful acts regardless of the date of the discovery thereof or directors' continuance in control of corporation."

Although because of the absence of any authoritative pronouncement in Ohio this question is not free from doubt, the Court holds that the control of the bank by defendant directors is not effective to suspend the operation of the statute of limitations until June, 1933.

## STATUTE OF LIMITATIONS AS TO CAUSES NUMBERED 35, 36 and 50.

These causes are grouped for purposes of convenience and not because the same statute of limitations applies to each. The 35th Cause of Action arises upon a statutory liability and is governed by §11222 GC, (the six year statute). This cause accrued more than six years prior to the time the case was instituted and is therefore barred.

For the reasons hereinbefore indicated, this suit as to Cause No. 36 must be considered as having been instituted at the time the amended petition was filed in October, 1938. It is not barred by any statute of limitation.

### CAUSE NO. 50

This cause sets forth several separate transactions, and under a strict construction of the rule might be considered as containing several separate causes of action. In heretofore overruling a motion to separately state and number these causes this Court was of the opinion that a contrary ruling would serve only the purpose of delay. The several transactions described in these causes are of the same general character and defendants are not prejudiced in any defense thereto by reason of their inclusion in one cause of action. The proposition that a demurrer cannot be sustained to a part of a cause of action is necessarily subservient to the overriding considerations that require fair and just determinations of the issues presented. Each separate purchase of securities referred to in this cause, should, therefore, be treated as a separate cause of action for the purposes of this demurrer.

The demurrer is therefore sustained as to the first five transactions appearing at the bottom of page 139 and the top of page 140 in the fourth amended petition. These transactions occurred more than four years prior to the institution of suit. The demurrer is overruled as to all other transactions involving the purchase or exchange of securities because such other transactions occurred within four years of the commencement of this action.

These rulings are fair to both plaintiff and defendants and accomplish the same result as though the motion to separately state and number had been granted.

## STATUTE OF LIMITATIONS—CAUSES 52 to 58 INCLUSIVE.

Defendant maintains that these causes are barred by the

provisions of §8623-123(c) GC. The pertinent part of that section reads:

"No action shall be brought by or on behalf of a corporation upon any cause of action arising under or pursuant to either of the two preceding sections at any time after two years from the day on which the violation occurred."

Sec. 8623-123(b) GC is the second of the "two preceding sections" referred to above, and reads, in part:

"The directors of a corporation shall not declare or pay dividends or authorize the withdrawal or distribution of any part of its assets except as provided in this act."

The manner in which dividends may be declared by corporations generally, is set forth in §8623-38 of the General Corporation Act which provides, in part:

"A corporation may declare dividends payable in cash, shares, or other property out of the excess of the aggregate of its assets less the deductions hereinafter required over the aggregate of its liabilities plus stated capital."

The declaration of dividends by Directors of banks is governed by §710-130 GC reading, in part, as follows:

"Dividend of undividend profits may be declared, when. The board of directors of any bank may declare a dividend of so much of its undivided profits as they deem expedient. Before such dividend is declared, not less than one-tenth of the net earnings of the company for the preceding half-year, or for such period as is covered by the dividend, shall be carried to surplus until such surplus amounts to fifty percent of its capital stock."

Asserting that the provisions of §710-130 GC are cumulative of the terms of §8623-38 GC, defendants maintain that these sections must be read and construed together. It is argued that such procedure is authorized and required by the terms of 710-52 of the Banking Act and 8623-132 of the General Corporation Act. Sec. 710-52 GC reads:

"Such corporation shall be created, organized, governed and conducted, and directors shall be chosen in all respects in the same manner as provided by law for corporations organized

under the general incorporation laws of this state, in so far as the same shall not be inconsistent with the provisions of this act."

The relevant provisions of Section 8623-132 in effect at the time of the transactions complained of, read:

"When special provision is made in the General Code for the incorporation, organization, conduct or government of corporations formed for any specified purpose, this act shall not apply, but the special provision shall govern unless it clearly appears that the special provision is cumulative."

It is true that in §§710-130 GC and 8623-38 GC, there are provisions whose similarity of purpose and effect can not be questioned, but it is also true that §8623-38 GC authorizes and permits, that which §710-130 GC prohibits, and the former section is to that extent in conflict with the latter. Specific points of conflict are apparent upon a comparison of these two sections. For example, §710-130 GC provides in effect, that no dividends shall be declared until the surplus of the bank amounts to at least 50% of its capital. Sec. 8623-38 GC, however, authorizes the declaration of a dividend by corporations generally, out of "excess assets" without reference to, or provision for, the creation and maintenance of a surplus account. The term "undivided profits" is defined by §710-1 GC to be: "credit balance of the profit and loss account of any bank or trust company." It is clear, therefore, that "undivided profits" from which a dividend may be declared by directors of a bank must appear in the appropriate account on the books of the bank at the time a dividend is declared. No such requirement is imposed by the terms of the General Corporation Act. On the contrary, §8623-38 (d) GC provides:

"Whenever a dividend is paid, in whole or in part, out of other than earned excess of assets appearing on the books of the corporation at the time of the declaration of such dividend, the shareholders receiving such dividend shall be notified as to its source."

It should be noted also that §710-129 GC of the banking act prohibits the declaration of dividends when a bank's reserves fall below the amount required by law. While §8623-38 (f) GC expressly authorizes directors of corporations generally, to establish reserves, that section also provides that nothing therein contained shall prevent the directors from

"abolishing such reserves." The reserves of a bank, consisting of a percentage of its deposits, which must at all times be maintained, are obviously different from the optional reserves of a general corporation which may be established or abolished in the discretion of the directors.

A comparison of §710-134 GC of the banking act relating to the use of surplus, and 8623-38 (e) of the General Corporation Act, dealing with the same subject matter, discloses important differences in the scope of the authorizations of the latter section and the combination of prohibitions and authorizations of the former. Again, the deductions from "actual profits" required by §710-130 GC, before the fund from which dividends may be declared is determined, includes items not found in the deductions from "excess of assets" as set forth in §8623-38 GC.

Defendant suggests that the provisions of §8623-38 GC which forbid the declaration of a dividend by a corporation "when there is reasonable ground for believing that it is unable or, by the payment of the dividend, may be rendered unable to satisfy its obligations and liabilities" find no counterpart in the banking act, and therefore must be read as a part of it. This provision in the General Corporation Act defines a general standard of fiscal care to be exercised in the interests of the corporate creditors. The provisions of the banking act which prohibit the declaration of dividends when the "Surplus" or "Reserves" are less than the percentages fixed by law, prescribe absolute standards of care. Manifestly, these higher standards supersede the general standard, and govern the conduct of bank directors in the matter of declaring dividends. It is apparent, therefore, that the dividend sections of the banking act are independent of the dividend sections of the General Corporation Act, and that the former are not cumulative of the latter.

Defendants also maintain that §§710-67 and 8623-123 (b) GC must be read and construed together. Sec. 710-67 GC reads:

"Any director of a bank who shall knowingly violate, or who shall knowingly permit any of the officers, agents or employees of a bank to violation any of the provisions of this act shall be held liable in his personal and individual capacity for all damages which the bank, its stockholders, or any other person shall have sustained in consequence of such violation."

The comparative provisions of §8623-123 (b) GC provide:
"* * * In case of any wilful or negligent violations of the provisions of this section, the directors, under whose admin-

istration the same shall have happened, (except those who shall dissent as hereinafter provided), shall be jointly and severally liabile to the corporation for the full amount of any such unauthorized dividend or distribution with interest at the rate of 6% per annum until the same shall be paid * * *."

Under the provisions of §710-67 GC the liability of the offending directors includes all damages sustained, whereas under §8623-123 (b) GC the measure of liability is fixed at the amount of the dividends paid, plus interest. No greater liability attaches for a wilful violation than for a negligent transgression of the provisions of the General Corporation Act. By the terms of that act a right of action accrues in favor of the corporation only, while §710-67 GC authorizes actions in favor of stockholders or any other person who suffered loss, as well as by the bank itself. The different measure of liability and the more extensive grant of rights which are contained in §710-67 GC clearly distinguish that section as defining causes of action which are distinct and different from those referred to in §8623-123 (b) GC.

Under the unqualified terms of §8623-123 (b) GC offending directors are liable for the full amount of the wrongful dividend, even though the actual damage to the corporation be less than that amount. It is understandable that in **Scullen v. Mutual Drug, 138 Oh St, 132,** Judge Turner should inquire whether this section imposed a penalty. The same question cannot be fairly directed to the provisions of §710-67 GC where the measure of liability is limited to the actual damage sustained.

Sec. 8623-123 (c) GC expressly restricts the application of the two year limitation therein specified, to actions arising under the two preceding sections of the General Corporation Act. The terms of this section cannot be enlarged by judicial construction to include the distinct and different causes of action defined by the banking act.

As stated in **25 O. Jur, 431, Section 10:**

"if a cause of action or ground of action is not within such enumeration, as reasonably construed, the statute like any other statute, is inapplicable, and should not by force or strained construction be applied thereto."

For the foregoing reasons, it is held that the two year limitation in §8623-123 (c) GC does not apply to the causes of action here under consideration.

Defendants also contend that §710-67 GC imposes a penalty

and is governed by the one year statute (§ 11225 GC). This proposition is not supported by the terms of the statute or the applicable principles of statutory construction.

> "A penalty is a sum of money exacted by way of punishment for doing some act which is prohibited, or omitting to do something which is required to be done."

**Toledo C & O. River R. R. v. Miller, 108 Oh St, 388.**

Sec. 710-67 GC does not exact a sum of money by way of punishment but authorizes the recovery of actual damages and is therefore remedial.

> "A statute which gives to the injured party compensation for the injury which he has sustained by reason of the failure to comply with a duty imposed by statute is remedial and is not a penalty."

**19 O. Jur. Sec. 15, p. 213; Belmont Co. v. Brown, 5 Oh Ap 394.**
In Fletcher Cyc. Corp. Perm. Ed. Vol. 3, Sec. 1209, page 666, the author succinctly states the difference between remedial and penal statutes, as follows:

"The most satisfactory division is to hold that if a statute authorizes a recovery without regard to the actual damage sustained, or to whether any damage has been sustained, it is penal; while if it merely authorizes a recovery of the actual damage sustained it is remedial and not penal."

> As hereinbefore noted there may be ground for asserting that §8623-123 (b) GC is penal, but there is no sound basis for placing §710-67 GC of the Banking Act in that category.

Plaintiff asserts these causes arise upon a liability created by statute and governed by §11222 GC, which provides:

"An action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."

Defendants, however, maintain that neither §710-67 GC or §710-130 GC creates statutory liability. It is urged by them that the condition in §710-67 GC, that violations must be "knowingly" committed is a limitation upon the common law liability of directors.

A most interesting and significant discussion of "liability created by statute" is found in Schmidt v. Merchants Despatch Transportation Company, 270 N. Y., 287; 104 A. L. R., 450. While that case involved the suit of servant against master, by analogy, the reasoning of the court and the principles therein declared are applicable here. At page 461 of 104 A. L. R., the court says:

"Difficulty arises only where the statute does not, in express terms, make any provision for such a cause of action. Then the problem is whether such a provisions should be implied. That depends, at least in great measure, **upon whether the duty is imposed for the special benefit of a particular group or class of persons. Only in such case can it be said that the statute creates a liability per se.** When the statute merely defines, in the interest of the general public, the degree of care which shall be exercised under specified circumstances, it does not 'create' a new liability; it merely changes the standard which must be applied in an action to recover damages caused by lack of care.

" 'A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose special benefit the statute was enacted, the right to recover the damages from the party in default is implied according to a doctrine of the common law expressed in 1 Com. Dig. tit. Action upon Statute (F), in these words: " ' "So, in every case, where a statute enacts, or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law." '. Texas & Pacific Ry Co. v. Rigsby, 241 U. S., 33, 39, 36 S. Ct. 482, 484, 60 L. Ed. 874." (Emphasis ours.)

In the causes of action here considered plaintiff alleges that the directors "wilfully and knowingly" violated §§710-67 GC and 710-130 GC. As hereinbefore indicated the last mentioned section prescribes absolute standards of fiscal care. These standards are for the benefit of the bank, its stockholders and those who deal with the bank.

In **Mason v. Moore, 73 Oh St, page 275,** our Supreme Court recognized that the provisions of the National Banking Act, similar to §710-67 GC, fixed a statutory standard of liability. Judge Price, who wrote the opinion in that case, after quoting Section 5239 of the Revised Statutes of the United States, says:

"We have in this section the statutory standard of liability, and it relates to every director who 'participated in or assented to' the violation of the provisions of the title of which said section forms a part." (See page 290 of the Opinion.)

Again, at page 291 of the opinion, it is stated:

"This statute does not preclude a liability at common law. If we leave the statute just considered and look to the common law liability of directors * * *."

The foregoing authorities support the view that the causes of action alleged in the causes numbered 52 to 58 inclusive, ▇ are based upon liabilities created by statute and are within the provisions of §11222 GC. Inasmuch as all of these causes relate to transactions which occurred within six years prior to the filing of suit they are not barred.

**To Summarize:**

The first two grounds of the demurrer are overruled.

As to the 4th ground, the demurrer is sustained as to causes on the ground that the facts in each of the foregoing causes of action numbered 20, 33, 34 and 59 to 96 inclusive, and 97 are not sufficient to constitute causes of action. The demurrer is overruled on this ground as to all other causes of action.

On ground No. 3 (the Statute of Limitations), the demurrer is sustained as to causes 1 to 19 inclusive, 21 to 32 inclusive, numbers 35, 37 to 49 inclusive, 50 (in part), 51.

The demurrer is overruled on this ground as to causes numbered 36, 50 (in part), 52 to 58 inclusive.

A journal entry may be prepared in accordance with the foregoing. Exceptions allowed to plaintiff and defendants on all adverse rulings.